MERIDIAN LIGHT & RAILWAY COMPANY ET AL. *v.* JOSIE
CATAR.

[60 South. 657-15.]

1. CORPORATIONS. *Reincorporation. Liability for claims on old company.*

Neither law nor equity will permit one corporation to take all
the property of another, deprive it of the means of paying
its debts, enable it to dissolve its corporate existence, and place
itself practically beyond the reach of creditors, without assuming its liabilities.

2. SAME.

Persons who acquire the property of the old corporations other
than at a foreclosure sale are not purchasers for value without
notice.

3. SAME.

Under the facts as stated in the opinion in this case the court
held that the new corporation was merely a reincarnation of the
old company, clothed with its powers and franchises, the only
change in identity being in the name; and that the new company was liable for the obligations of the old company, including a claim for damages, accruing against the old company during its existence.

APPEAL from the chancery court of Lauderdale county.

HON. SAM WHITMAN, JR., Chancellor.

Suit by Jessie Catar against the Meridian Light &
Railway Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.
For former opinion see 60 South. 15.

*Baskin & Wilbourne* and *Edward Mayes*, attorneys for
appellants.

*Witherspoon & Witherspoon* and *F. V. Brahan*, attorneys for appellee.

Counsel on both sides filed briefs too long for publication.

Argued orally by *R. E. Wilbourne,* for appellants.

COOK, J., delivered the opinion of the court.

This case is here on suggestion of error. The case was affirmed at a former day of this term, without an opinion, upon the theory that the facts disclosed in the record justified the finding of the chancellor.

The Meridian Street Railway & Power Company, a corporation, in December, 1900, owned and was in possession and control of a run-down and unprofitable street railway doing business in the city of Meridian, and the officers, directors, stockholders, and bondholders, who seem to have been the same persons, made a verbal contract with Stoutz, Ambrecht & McAlpine looking to the sale of all the assets and stock of the company for eighty-three thousand dollars. At this time no conveyance of the assets was executed; but it is said that Stoutz, Ambrecht & McAlpin took possession of the property and proceeded to operate same, paying something like three thousand dollars in cash, and making expenditures in repair of the cars and plant.

It was understood by the parties to this agreement that Stoutz & Co. would proceed to organize a new corporation to take over the property, and, in fact, did organize a new company, which company did deliver to a trustee nominated by the stockholders, officers, and bondholders of the old company the bonds and stock of the new company, taking in return therefor all of the property, bonds, stock, and franchises of the old company.

Pending the organization of the new company, a trustee was appointed, and the property was conveyed to him, to be by him conveyed to Stoutz, Ambrecht & McAlpine when they should deliver to him the bonds of the

company to be formed, and then Stoutz, Ambrecht & Mc-Alpine, or the trustee, at their request, would convey the property to the new company.

The new company, the Meridian Light & Railway Company, appellant, was organized February 23, 1901, and its directors, upon the date of the organization passed resolutions providing for the delivery to the trustee, or his nominees, its stock to the amount of one hundred and twenty-five dollars and its bonds to the amount of one hundred and six thousand dollars to pay for the property, stock, and bonds of the old company. Afterwards, in March, the old company executed to McMorries, the trustee, a deed to all its property, and on the same day McMorries executed a deed for same to the new company, the Meridian Light & Railway Company, appellant.

No effort has been made to relate chronologically and in accuracy of detail the procedure adopted by the parties to this transaction, but it is intended only to state the thing accomplished sufficiently to render the conclusion intelligible.

To sum up, the owners of the old company desired to sell out, and Stoutz, Ambrecht & McAlpine desired to trade for the property for a corporation to be organized. The Company was organized, and did take over the property according to the plan agreed upon.

Long prior to the events just related, appellee was injured while a passenger on one of the cars of the old company, and claimed that her injury resulted from the negligence of the company. Just before the organization of the new company, Mr. Kamper, one of the largest stockholders of the old company, and the owner of ninety-five per cent of the stock of the new company when organized, called upon the appellee to persuade her not to bring suit against the old company, informing her of the pending organization of a new company, and saying to her that the new company would make a satisfactory settlement with her at once.

Appellee afterwards instituted in the circuit court a suit against the old and new companies jointly, and ultimately secured a judgment against the old company, dismissing her suit against the new company without prejudice.

This case is based upon a bill in equity to subject the assets of the old company, in the hands of the new company, to the payment of this judgment obtained against the old company in the circuit court.

The bill proceeds upon several theories: (a) That the transaction by which the assets of the old company were transferred to the new company was a merger; (b) that the new company took the property in trust for the payment of the debts of the old company; (c) that the pretended sale of the assets of the old company was a fraudulent scheme to hinder and delay creditors of the old company in the collection of their debts.

The suggestion of error is mainly based upon the contention that whatever may be said about the fraud of the stockholders and officers of the old company it is clear that Stoutz, Ambrecht & McAlpine purchased the property in good faith and for value, without notice of the claim of appellee against the old company, and long before she instituted her suit.

Other reasons are assigned why this court should recede from its former judgment, but as a decision of this point against appellant will be decisive of all other questions this opinion will be confined to a discussion of the main issue.

Ignoring details and looking to results intended and accomplished, the facts show that Stoutz, Ambrecht & McAlpine merely agreed with the stockholders of the old company that they would undertake the organization of a new corporation for the purpose of taking over the old company and its assets; and, while the original transaction is spoken of as a sale, it was in fact nothing more than an agreement to sell the property to a company not

yet in existence, and if this was accomplished the promoters, Stoutz & Ambrecht, were to get all in excess of eighty-three thousand dollars that the new company should agree to pay. Stoutz & Ambrecht and the stockholders of the old company jointly entered into a scheme to promote and organize a new company, which was to be merely a reincarnation of the old company, clothed with the powers and franchises of the deceased; the only change in identity being in the name.

On the day the new company was born, it issued its bonds and stock to the stockholders of the defunct company, secured by the very property which it inherited from the old company, in payment for the property received from its predecessor. It bonded the property to be purchased before it obtained title to same. In other words, its bonds were secured by property which it had merely contracted to buy.

The new company came into being for the sole purpose of taking the life of one of its creators and gobbling up the deceased's estate. The old company dies that the new company might live. Technically, this was not a consolidation—and probably it was not a merger as defined by the courts—but it was, at least, what some of the authorities have termed a reincarnation; and by whatever name it may be called it stripped the old company of all of its property, left it without the means to pay its debts, absorbed its stocks, bonds, and franchises, and took up its residence in the house of the deceased. It will be noted that the stockholders and officers of the absorbed company actually aided and assisted in bringing about this result. The record shows, as before stated, that Mr. Kamper, the largest stockholder of the old company, presided at the funeral obsequies, holding ninety-five per cent of the stock of the company brought into being by the death of the old company; the birth of the one and the death of the other being contemporaneous.

The courts are frequently called upon to deal with transactions of this character, but it is difficult to find a

decision based upon facts exactly similar to the facts of the present case.

Succeeding corporations are not infrequently held liable where there may not be strictly a consolidation. Neither law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence, and place itself practically beyond the reach of creditors, without assuming its liabilities. Thompson on Corporations, section 6082, citing *Atlantic R. R. Co* v. *Johnson,* 127 Ga. 392, 56 S. E. 482, 11 L. R. A. (N. S.) 1119; *Douglass Printing Co.* v. *Over,* 69 Neb. 320, 95 N. W. 656; *Austin* v. *Tecumseh Nat'l Bank,* 49 Neb. 412, 68 N. W. 628, 35 L. R. A. 444, 59 Am. St. Rep. 543; *Carstens* v. *Hofius,* 44 Wash. 456, 87 Pac. 631; *Blair* v. *St. Louis, etc.* (C. C.) 22 Fed. 36; *Id.* (C. C.), 24 Fed. 148; *Central R. R. Co.* v. *Paul,* 93 Fed. 878, 35 C. C. A. 639. Generally, persons who acquire the property of the old corporation other than at a foreclosure sale are not purchasers for value without notice. Thompson on Corporations, section 6093.

This court has had similar questions under review, and the principles now announced are in entire harmony with its former opinions. *Morrison* v. *Snuff Co.,* 79 Miss. 330, 30 South. 723, 89 Am. St. Rep. 598; *Telephone Co.* v. *Telephone Co.,* 79 Miss. 341, 30 South. 725.

What was done in the present case was to all intents and purposes a consolidation without legislative authority, and a *de facto* consolidation resulted. In *Bradford* v. *Frankfort, etc., R. Co.,* 142 Ind. 383, 40 N. E. 741, 41 N. E. 819, the supreme court of Indiana held that an *ultra vires* consolidation bound the constituent companies, and the valid existence of the consolidation could only be questioned by the state.

When the new company was born, it possessed nothing tangible but a name; but it had expectations, inasmuch as the reason for its existence was to permit one of its

parents to convey to the new arrival all its worldly goods and then vanish. Upon the faith of its expectations, it issued its bills payable and delivered them to those persons charged with the care and maintenance of the financial well-being and continued life and usefulness of the decrepit parent, whose life was to be sacrificed in order that the caretakers might prosper.

The agreement and the whole scheme was to obtain the property of the old corporation by paying the stockholders the purchase price—not to be paid by the stockholders to the corporation, but to be kept by the stockholders as their own. While it may be conceded that the company is but another name for the stockholders, it is nevertheless patent in the present case that the stockholders were taken care of as individuals, and the corporation and its creditors were frankly· ignored.

In this case the constituent companies are estopped to take advantage of their own wrongs; a consolidation without authority was accomplished, and the new company must take with the property and franchises of the old company the obligation to pay its debts.

*Suggestion of error overruled.*