CHRISTENSEN *et al. v.* MERCHANTS' & MARINE BANK OF PASCAGOULA *et al.*

(In Banc. Oct. 16, 1933.)

[150 So. 375. No. 30646.]

44

**H. B. Everitt,** of Pascagoula, for appellants.

46

Mize, Thompson & Mize, of Gulfport, for appellants.

Ford, White & Morse, of Pascagoula, for appellees.

50

Argued orally by **S. C. Mize** and **H. B. Everitt**, for appellant, and by **E. J. Ford**, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

Christen Christensen and other depositors in the Merchants' & Marine Bank, a corporation organized under the laws of the state of Mississippi, filed their bill in the chancery court of Jackson county against the Merchants' & Marine Bank of Pascagoula, a new banking corporation organized under the laws of the state of Mississippi, seeking a recovery from the latter bank, appellee here, of the amount of deposits to their credit in the Merchants' & Marine Bank in liquidation by the state banking department.

They alleged in their bill that on or about the 15th day of October, 1931, J. S. Love, state superintendent of banks, closed and took charge of said Merchants' & Marine Bank, by the request of its officers and directors, for liquidation of its affairs in accordance with the banking laws of the state; but did not proceed further with

same until January 23, 1932; that, during said interval, he caused a financial, detailed statement of the condition of said bank to be made up, showing the assets and liabilities of said bank, a list of its stockholders, its time deposits, public funds, secured and unsecured, and the securities given for certain of its liabilities, a copy of which, in its abstract form, is filed with the bill.

It was alleged in the bill that on January 23, 1932, J. S. Love, superintendent of banks, filed, in the chancery court, his petition asking the court to assume jurisdiction of the matter of liquidation of said bank, as provided by statute, and, accordingly, an order was made in vacation and entered on the minutes of said court; and that, on the same day, the said J. S. Love, superintendent of banks, for the first time filed with the chancery clerk the aforesaid statement of the condition of said bank in liquidation, and presented to the chancellor, at Gulfport, a petition setting forth that, since the taking over of said Merchants' & Marine Bank for liquidation, efforts were begun by the officers and directors of said bank in cooperation with the state banking department, and a committee of depositors, to work out an arrangement by which a new bank could be organized to take over the assets of the Merchants' & Marine Bank in liquidation; that such reorganization plan embraced the organization of a new bank by the name of "The Merchants' and Marine Bank of Pascagoula," to be capitalized at twenty-five thousand dollars, and to be domiciled at Pascagoula, requesting that, if approved by the court, he turn over and convey to this new bank all the assets of the old bank in consideration of the assumption by the new bank to pay in full all correspondent banks and public depositors, and to pay seventy-five per cent of all other depositors, five per cent in thirty days; ten per cent in one year; twenty per cent in two years; twenty per cent in three years, and the balance in four years from the date of opening for business, without interest, and, in case the bank realized more than that amount (exclusive of interest

which should belong to the new bank, such excess to be distributed pro rata to those receiving seventy-five per cent; that, with said report and recommendation, it was reported that fifty-nine per cent in numbers, representing ninety-three per cent in amount, of the depositors, had signed an agreement to accept the adjustment proposed, in consideration of the new bank agreeing to pay in the manner and at the times aforesaid; and to waive their claim to be further paid by resorting to the stockholders' liability under the statute, and filed a copy of said agreement as an exhibit to the bill of complaint. It was further charged that on January 23, 1932, before the chancellor in vacation, at Gulfport, without any appraisement of assets, without notice of such application, and wholly without the knowledge or consent of the complainants who did not sign any agreement with reference thereto and without any special listing of the depositors to be paid in full, an order was made by the chancellor and entered on the vacation minutes of the court, approving and authorizing the consummation of such transfer to the Merchants' & Marine Bank of Pascagoula of all the tangible assets of the Merchants' & Marine Bank in liquidation, and thereupon said transfer was made and consummated by J. S. Love, superintendent of banks, a copy of which order is filed with the bill as an exhibit. It is further charged that complainants and a number of other depositors, in the aggregate amount of some ten thousand dollars, refused and did not sign the agreement mentioned, or any other agreement with reference thereto, and did not consent to such reorganization and transfer, and had no sort of notice that any such petition would be filed, and this court asked to authorize such transfer of the assets of the old bank to the new bank; and further charged that said assets were of sufficient value to pay all the debts of the closed bank in full, and that said assets filed by J. S. Love, superintendent of banks, were taken over by the new bank charged with the payment of debts owing to the complainants, with interest, and

that the new bank took same with full knowledge of the existence of said debts. And complainants further charge that demand has been made upon said new bank and such payment has been refused, except that tender has been made of the first installment of five per cent, and that they will be expected to submit to the agreement for future settlement by future installment as provided for by said written agreement made by some other creditors. It is further charged that the superintendent of banks was without authority to consummate said transfer and make the same binding upon those depositors, who did not sign said agreement, that his acts were without authority of law, and the bill then prayed that it be considered as for and in behalf of all creditors of the old bank in the same attitude desiring to join therein and assume liability for costs, etc., and that, on final hearing, the complainants might have a judgment against the Merchants' & Marine Bank of Pascagoula, for the full amount of their claims, with interest thereon from October 15, 1931, and also for general relief.

In the order reciting said agreement and approving the sale, the court required a bond for ten thousand dollars to be given with solvent sureties, to guarantee the payment of the obligations the bank had agreed to pay, the order also reciting that no partiality should be shown between the depositors and creditors of the closed bank under the plans submitted, because the correspondent banks and the public depositors of the closed bank were adequately secured in the payment of their claims in full, with interest, by a pledge of a portion of the assets of the Merchants' & Marine Bank in liquidation; and that the Merchants' & Marine Bank of Pascagoula report to the court its acts and payments under the agreement, filing with the court a detailed list of all its affairs in regard thereto. The decree further specified the assets and liabilities, and required the Merchants' & Marine Bank of Pascagoula to use diligence in collecting all that could be reasonably collected, and required that,

should the amount be over and above that necessary to pay the balance payable to the closed bank's depositors, such excess should be distributed ratably among creditors whose claims had not been fully paid.

The Merchants' & Marine Bank of Pascagoula demurred to the bill of complaint filed by the appellant on the ground (1) that there is no equity on the face of the bill; (2) that the bill seeks to set aside the decree of the court in a case then pending; (3) that the bill shows that the Merchants' & Marine Bank of Pascagoula is now acting as liquidator of the closed bank, and that said acts are being done under authority of the superintendent of banks and the chancery court of Jackson county; that the liquidation is not complete, and that it is not now possible to ascertain what percentage of their respective deposits the complainants are entitled to receive; (4) that the bill does not state any facts showing that the complainants are entitled to any perference over other creditors; (5) that the bill fails to allege or show upon what theory the defendant here is liable to complainants for the full amount of their respective deposits in the closed bank; and (6) for other grounds to be assigned at the hearing.

The court sustained this demurrer, and, the complainants declining to plead further, the bill was dismissed, from which this appeal is prosecuted.

Some of the grounds of the demurrer are special, and some are general, and the suit might be disposed of on some of its grounds without going into the merits.

However, we think, on its face, the bill shows no equity, and that the complainants are not entitled to the relief prayed for, or to any relief at this time under the allegations of the bill. Business of a bank is a public utility or a business, for the public use, and the legislature has very comprehensive powers in dealing with and regulating such business. Noble State Bank v. Haskell et al., 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, affirming 22 Okla. 48,

97 Pac. 590; Shallenberger v. First State Bank, 219 U. S. 114, 31 S. Ct. 189, 55 L. Ed. 117, reversing (C. C.) 172 Fed. 999; Noble State Bank v. Haskell, 219 U. S. 575, 31 S. Ct. 299, 55 L. Ed. 341. See, also, authorities in United States Supreme Court Reports Digest, Constitutional Law, section 409. The holding of the United States Supreme Court in Noble State Bank v. Haskell, supra, and Shallenberger v. First State Bank, supra, laid down very comprehensive rules with reference to the power of the legislature over businesses affected with a public use.

Section 3817, Code 1930, in the statute in reference to the affairs of insolvent banks, we think constitutes authority for what was done in the case at bar, under the allegations of complainant's bill. It is there provided that: "In liquidating the affairs of insolvent state banks taken over by him, the superintendent of banks shall proceed by first filing a petition in the chancery court of the county in which the bank is located, submitting the liquidation of such bank to the jurisdiction of that court and thereafter the liquidation shall proceed under the orders and directions of that court. The chancery court or the chancellor in vacation shall have full jurisdiction to make any and all orders in the course of the liquidation proceedings. . . . By and with the consent of the court or of the chancellor in vacation evidenced by an order entered in the liquidation proceedings he may sell any of the property, real, personal or mixed, belonging to the bank either at private or public sale, and a deed made by him . . . shall convey to the purchaser all of the rights, title and interest of the bank and of the state banking department in any such property. . . . Upon taking possession of the property and assets of a bank, the superintendent shall make an inventory of its assets in duplicate, one to be filed in the office of the banking department, and one in the liquidation proceedings in the chancery court. Upon expiration of the time fixed for the presentation of

claims, the superintendent shall make in duplicate a full and complete list of the claims presented, including and specifying which claims have been rejected by him, one to be filed in the office of the banking department and one in the liquidation proceedings in the chancery court. Such inventory and list of claims shall be open at all reasonable times to inspection. . . . At any time after the expiration of the date fixed for the presentation of claims, the superintendent may, out of funds remaining in his hands, after the payment of expenses, declare and pay one or more dividends to creditors, and as soon as practicable thereafter, he shall declare and pay a final dividend, such dividend to be paid to such persons and in such amounts and upon such notice as may be directed by the chancery court having jurisdiction of the liquidation.''

The statute is a very comprehensive one, as will be seen from the excerpts above quoted.

The appellants contend that it was not competent to make a sale of the assets to the new bank, unless the new bank had assumed to pay in full all the debts of the insolvent bank.

Under section 3792, the superintendent of banks has power to sell all the assets of an insolvent bank to any solvent bank on the giving of a bond with sufficient sureties to pay the creditors in full. The two sections are independent of each other, and provide different schemes for settling the affairs of insolvent banks. Experience in dealing with banking institutions has shown the necessity for providing schemes for their control and for their liquidation when they become unable to pay their obligations. A business, such as the one before us, affected with a public use, and vitally affecting the general welfare of the public, should have such laws. Banking institutions are necessary and are highly convenient; but it is inevitable that, in case some banks become unable to function as banks, some sort of control over their affairs of their assets, or collecting them as they become

due, is necessary. It is difficult to collect the assets of a bank in liquidation. It is well known that many obligations due a bank are more easily collected when the bank is a going concern, open and doing business, than when it is done by a liquidating agent or a receiver. Liquidation proceedings are highly expensive, and the amounts received by creditors and depositors are usually less than the full demands. In other words, it is the usual thing, in liquidation proceedings, for its stockholders and creditors to suffer losses.

The two statutes referred to above were enacted in an effort to obtain for the creditors and stockholders a more speedy payment, and, if possible, a better percentage, of the amount of their claims. See, also, Code 1930, section 458.

Under section 3817, the superintendent must secure the consent and approval of the chancery court in which the liquidation proceedings are being administered, before he can sell the assets of the insolvent bank. The assets are not required to be sold all at one time, under the statute, and neither does it prevent all the assets being sold at any particular time, but designs to have a more rapid and better liquidation of the affairs of the insolvent bank, and such a sale as would better promote the interest of the creditors and depositors of the bank.

It is, of course, preferable, other things being equal, that the liquidation be speedily wound up, and that the assets be sold for a fair and reasonable value. Usually, when a bank becomes unable to pay its depositors the sums of money due them, thus preventing them from using the money in their business, and when the depositors must wait until money is received in liquidation proceedings sufficient to pay all depositors in an equal degree, great hardships are suffered. The legislature, no doubt, considered, in the enactment of the statutes above referred to, that the public interest would be better promoted by authorizing sales in bulk, or sales of all the assets at one time, providing such sales would bring, in

all reasonable probability, as much as would be collected in the usual proceedings; that money in hand is better than money owing, the collection of which is somewhat doubtful and uncertain. The statutes are remedial in their nature and object, and should receive a liberal construction.

We think, therefore, that section 3817 authorizes sales in bulk at any stage in the liquidation, and that it does not require the bank superintendent and the chancery court to sell the assets in several pieces, but that it may be grouped and appraised in the light of existing conditions and the surrounding transactions, if that be deemed to be the proper course.

It is urged that the sale could not be made, as was done in this case, and that the depositors who did not consent to the reorganization must be paid in full on demand.

Depositors, or other creditors of a bank in liquidation, are not entitled to the payment of their claims as preferred claims, unless such claims were preferred claims before the liquidation. They cannot obstruct the liquidation, by such tactics, and be preferred over creditors who are willing to consent to the reasonable plans of reorganization. They must wait for their money until it is realized in the liquidation proceedings, or until sufficient money is realized to pay all creditors in full, or a portion of their demands to be determined by the superintendent of banks and the chancery court. They have no absolute right to be paid until the liquidation proceedings have realized sufficient money to pay them and the other creditors without giving them any preference over other creditors. It is not, in our opinion, under section 3817, required that the sale should, in all cases, be for cash. The bank superintendent and the chancery court have the right, under the statute, to determine whether a sale, under the plan herein involved, or similar plans, should be partially on credit, or on terms during a period that would best promote the interest of the creditors and stockholders of the bank.

Discretion is vested, by the statute, in these officers, which we must assume, in this case, was reasonably and fairly exercised, to take such steps as would result in a safe and speedy payment of all creditors of the bank.

It is certain that the assets of a bank are subject to fluctuation according to existing conditions from time to time. A creditor, in such case, when he makes his deposit, makes it subject to existing law, or to that which may be enacted under the constitutional power of the legislature in such cases.

The liquidation of banks is dependent upon men intrusted with the custody and control of such. It is competent for the legislature to confer upon the superintendent of banks and the chancery court the discretion and judgment to take such action as under such discretion would best promote the general welfare. Of course, the legislature is not infallible, and neither is any other human institution. But judgment must rest somewhere, and the legislature is vested with the discretion and judgment to determine in what persons, and under what circumstances, discretion may be exercised in affairs of this kind.

After full consideration of the questions involved, we think the chancery court, in the case at bar, was acting within its powers, and that the judgment of the court below must be affirmed.

Whatever rights depositors or other creditors may have to affect the liquidation proceedings, they must file their petitions or other proceedings in the original liquidation proceedings, and cannot file separate suits to assert them, as was here attempted. The chancery court, having jurisdiction in the original liquidation proceedings, must have all such matters in the original proceedings, and may do whatever may legally be done in such suit so long as it is, as here, a pending matter.

Affirmed.

**Anderson, J.,** delivered a dissenting opinion.

In Gift v. Love, 164 Miss. 442, 144 So. 562, the court held, in effect, that the statutory double liability of stockholders in a bank could not be gotten rid of by hook or crook; that such liability was rooted into and a part of the stockholder's contract for his stock subscription.

Now, let us see what has been done here. The depositors, which included at least some of the stockholders, who agreed to a sale of the asserts of the defunct bank to the new bank, signed a writing setting out the terms of the sale, one provision of which was in this language: "It is further agreed that in consideration of the premises the stockholders of the closed Merchants' & Marine Bank are hereby released from all statutory liability for my deposit." The superintendent of banks presented to the chancery court, along with his petition asking that the sale be authorized, this agreement of the depositors. In the decree of the court authorizing the sale the plan outlined in the petition of the superintendent of banks was ratified; the assets of the old bank, which were sold to the new bank, were carefully and specifically described; and there is no mention, as a part of the assets of the double liability of the stockholders. In other words, there is no pretense in the decree of the court authorizing the transfer, that the double liability of the stockholders was to go to the purchasing bank as a part of the assets of the old bank. So, it appears very clearly that one of the outstanding purposes sought to be accomplished was to relieve the stockholders from double liability, a thing which, under the law, could not be done. The decree authorizing it to be done is void, and can be attacked either directly or collaterally upon that ground.

The controlling opinion states that the sale took place under the authority of this language in section 3817, Code 1930: "By and with the consent of the court or of the chancellor in vacation evidenced by an order entered in the liquidation proceedings he [superintendent of banks]

may sell any of the property, real, personal or mixed, belonging to the bank either at private or public sale, and a deed made by him under the seal and attested by the secretary of the state banking department shall convey to the purchaser all of the rights, title and interest of the bank and of the state banking department in any such property." The court holds that the power given by this provision of the statute to sell any part of the property carried with it the power to sell all of it in bulk.

There would be force in that position, except for the following language in section 3792, Code 1930: "After the superintendent of banks has taken charge of an insolvent bank, he shall have power and authority by and with the consent of a majority of the directors, to sell all assets of such bank to any solvent existing bank at such price as the superintendent may consider a fair and reasonable value for all such assets, allowing such purchasing bank to assume the full amount due all creditors of the liquidating bank and paying the remainder of the purchase price, if any, to such liquidating bank. But in all cases the superintendent shall require the purchasing bank to execute to him and his successors in office a bond with one or more good and approved sureties for the benefit of all creditors agreed to be paid by such bank. And in case the purchasing bank fails to pay any creditor the full amount of his claim, he shall have the right to bring suit in the name of the superintendent against such purchasing bank and the sureties on its bonds, and all parties in interest may join therein."

Section 3817 takes up fully three pages of the Code. It is headed "Liquidation proceedings," and undertakes to set out in detail how the superintendent of banks shall liquidate insolvent banks whose affairs are taken over by him. The above-quoted provision of the statute, in my judgment, has reference alone to the sale of such parts of the assets of the bank as the superintendent and the chancery court, or chancellor, may deem necessary from time to time in order to turn such assets into money;

in other words, it is strictly a liquidation statute. If, under it, the superintendent of banks with the consent of the chancery court, or the chancellor, could sell the entire assets of the bank in bulk, there would be no liquidation proceedings. The only statute that authorizes the sale of all the assets, in bulk, to another bank is the provision of section 3792 above quoted. It will be noted that it provides that the purchasing bank must be solvent and must pay a fair and reasonable value for the assets. The purchasing bank must assume in full all the debts of the liquidating bank, "paying the remainder of the purchase price, if any, to such liquidating bank." It provides that the superintendent shall require the purchasing bank to execute to him and to his successors in office a bond with one or more good and approved sureties for the benefit of all the creditors of the bank in liquidation, and, in case the purchasing bank fails to pay any creditor the full amount of his claim, the right is given him to bring suit in the name of the superintendent against the purchasing bank and its bond.

The record in this case demonstrates that the chancery court was proceeding under both sections 3792 and 3817, and not under either one of them alone. The court required a bond of the purchasing bank; that was not required by section 3817, but is required by section 3792. Furthermore, section 3817, as stated, contains a complete and detailed plan for the liquidation of an insolvent bank taken over by the superintendent, not a sale, in bulk, of all of its assets. It contemplates the turning of the assets into money—cash—for the benefit of the creditors of the bank.

Section 458, Code 1930, providing that the chancery court may decree the sale of property on such terms and at such time and place as the court may direct, has no application. The sale of all the assets of a bank to be paid for by the purchasing bank in installments running through a period of four years is not a liquidation proceeding. In such a case the creditors of a defunct bank

are still unpaid; the assets of the bank are still unliquidated. In other words, the superintendent leaves off where he starts. A power to sell, in the absence of special authority or custom or usage to the contrary, authorizes only a sale for cash and not on credit. 2 C. J. 599; 9 C. J. 526; 49 C. J. 1273. See, also, 57 C. J. 113, particularly note 99. Therefore my view is that the sale was void for those additional reasons.

I agree with the majority opinion that appellants were not entitled to any preference out of the assets of the bank in liquidation; they are only entitled to share pro rata with other creditors holding like unsecured claims.

Appellants allege in their bill that the assets sold to the appellee bank were sufficient to pay all creditors in full. Appellants were not parties to the chancery court proceeding in which the sale was authorized; they are not bound by the decree in that case; it is not res adjudicata as to them. If the appellee received assets of sufficient value to pay all the creditors of the liquidating bank, it is liable for their claims in full. It is true that appellants asked for a preference, but they state the facts in their bill and have a prayer for general relief. Under their bill and such prayer they have a right to attack the sale—a credit sale—on the ground that the purchasing bank was liable for the full value of the assets it received.

Under the law one corporation cannot take over all the property of another and thereby deprive it of the means of paying its debts and enable it to dissolve its corporate existence, without assuming its liabilities. Meridian Light & R. Co. v. Catar, 103 Miss. 616, 60 So. 657.

I am requested by Chief Justice SMITH to say that he concurs in this dissent.