# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01145-SCT

*H.S. STANLEY, JR., CHAPTER 7 TRUSTEE FOR
THE BANKRUPTCY ESTATE OF GULFPORT
PILOTS ASSOCIATION, INC., AS SUBSTITUTED
FOR MICHAEL KOPSZYWA*

*v.*

*MISSISSIPPI STATE PILOTS OF GULFPORT,
INC., MURRELL W. HINTON, JR., STANLEY
FOURNIER, JR. AND THOMAS GIBSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2004 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE W. BYRNE, JR. |
| | RANDALL SCOTT WELLS |
| ATTORNEY FOR APPELLEES: | NICHOLAS VAN WISER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 12/07/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     In this case, we consider whether a judgment in a fraudulent conveyance action was proper. Finding that both the successor corporation and its directors are liable for the debts of the previous corporation, we reverse and remand.

### FACTS

¶2.     The facts of this case are not in dispute.

¶3.     Gulfport Pilots Association, Inc., (GPA) was engaged in the business of piloting ships in and out of Gulfport Harbor. Four pilots were also the owners, officers, and directors of the corporation. Other employees included a pilot boat operator and four dispatchers. Michael Kopszywa was employed as the pilot boat operator in March 1995 when he was injured on the job. Mr. Kopszywa brought suit in the Circuit Court of Harrison County under the Jones Act. On March 25, 1997, after a two-day mediation, the case was settled for $200,000, plus outstanding medical bills of approximately $20,000.

¶4.     When the GPA's Bahama-based insurance company refused to pay and subsequently became insolvent, Mr. Kopszywa filed a motion to enforce settlement with the circuit court. A hearing on the motion was held on May 16, 1997, at which time the court announced it was going to rule in favor of Mr. Kopszywa. On May 22, 1997, the same day the circuit court judge entered his order granting the motion, the directors filed articles of incorporation for Mississippi State Pilots of Gulfport, Inc. They became owners, officers, and directors of the new corporation and transferred all of the employees from the old corporation to the new one. Mississippi State Pilots continued to operate from the same business address, used the same dock, the same accountant, the same law firm, the same bank, and served the same customers as GPA.

¶5.     A week later, on May 29, 1997, the directors transferred ownership of one of the boats, the *Gulfport Pilot II*, to the new corporation by executing a promissory note for $12,000 in favor of the old corporation. That same day, all four resigned as employees of the old corporation, while remaining owners, officers, and directors. As a result, GPA was

2

left with no employees and no assets other than some outstanding bills for work done prior to the formation of the new corporation and a dilapidated piloting boat, the *Gulfport Pilot I*.

¶6.    On June 26, 1997, Mr. Kopszywa filed a fraudulent conveyance action against Mississippi State Pilots and the individual directors in the Chancery Court of Harrison County.  On June 15, 1998, the day the matter was set for trial, the directors filed for Chapter 7 bankruptcy for GPA, staying all proceedings in the chancery court.  The only remaining asset of the old corporation, the *Gulfport Pilot I*, sank the day it was turned over to the bankruptcy trustee.

¶7.    The stay was finally lifted on November 21, 2001, and the matter was remanded to the chancery court to allow the trustee, H.S. Stanley, Jr., to proceed on behalf of Mr. Kopszywa on the fraudulent conveyance claim.[1]  At trial, the directors testified that their intent in forming the new corporation was to keep Mr. Kopszywa from collecting his judgment.  The chancellor found that the directors had fraudulently conveyed the *Gulfport Pilot II* and one week's worth of accounts receivable to the new corporation.  While noting that Defendants' actions were "distasteful and perhaps even morally wrong," the chancellor did not find that the fraudulent conveyance pertained to any other assets of the new corporation.  As a result, the chancellor found that the trustee could only recover $10,064.50 from Mississippi State Pilots of Gulfport.

## ISSUES ON APPEAL

---

[1]11 U.S.C. § 544(b) permits the trustee to avoid fraudulent transfers and gives the trustee the rights of any actual creditor who may avoid a transfer under state law.

¶8.    There are two issues on appeal: (1) whether the trial court erred in failing to find that the new corporation could be liable for the entire judgment and (2) whether the trial court erred in failing to find the directors personally liable.

## STANDARD OF REVIEW

¶9.    "We will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous." *Williams v. Williams*, 843 So. 2d 720, 722 (Miss. 2003).

## DISCUSSION

**I. Corporate Liability.**

¶10.    We begin with the basics:

> The general rule states that a corporation which acquires the assets, but not the stock of another corporation, is not obligated for the liabilities of the acquired corporation. Four exceptions to this rule have been carved out by this Court in instances where: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction was fraudulent.

*Paradise Corp. v. Amerihost Dev., Inc.*, 848 So. 2d 177, 179 (Miss. 2003) (citing *Huff v. Shopsmith, Inc.*, 786 So. 2d 383, 388-89 (Miss. 2001). The last two exceptions are applicable in this case.

¶11.    Regarding the fraudulent transaction, the main issue in this case is not *whether* there was a fraudulent conveyance but *what assets* were fraudulently conveyed under Miss. Code

4

Ann. § 15-3-3 (repealed 2006).[2] Fraudulent conveyance of an entire business was thoroughly examined by this Court in *Morris v. Macione*, 546 So. 2d 969 (Miss. 1989). In *Morris*, we affirmed a chancellor's ruling to enforce specific performance of a contract when shareholders of a clothing store dissolved the corporation, created a new one, and transferred the store's assets to the new entity. *Id.* We noted that "a corporate obligor and those who control it may not with impunity dissolve the corporation in a debt avoidance maneuver and cause its assets to be transferred to a new successor corporation. This is so whether the debt arises in contract, quasi-contract, or tort." *Id.* at 971 (internal citations omitted). Furthermore, "(n)either law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence, and place itself practically beyond the reach of creditors, without assuming its liabilities." *Id.* (quoting *Meridian L. & R. v. Catar*, 103 Miss. 616, 621, 60 So. 657, 658 (1912)).

¶12. The chancellor correctly cited *Morris* for the proposition that "the creditor's rights in such cases are limited to the extent that the successor corporation acquired the assets of the predecessor." However, because the trial court limited its inquiry to the one week that the directors were employed as pilots by both corporations, the chancellor failed to find that Defendants fraudulently conveyed the entire business to the new corporation. In this case, the defendants improperly transferred their entire business in order to avoid a legal obligation. Moreover, this fact was *repeatedly admitted* at trial by *all* of the individual

---

[2]This statute has been replaced, effective July 1, 2006, by the Uniform Fraudulent Transfer Act, Miss. Code Ann. §§ 15-3-101 et seq. (Supp. 2006).

defendants. The new corporation was formed the same day the order to enforce settlement was entered.

¶13. The new corporation operated from the same business address, used the same dock, the same accountant, the same law firm, the same bank, and served the same customers as GPA. The remaining accounts receivable were used to pay the outstanding debts of GPA (other than Mr. Kopszywa's Judgment), and the rest was divided among the directors. The only asset that was transferred for value, the *Gulfport Pilot II*, was found by the trial court to be fraudulently conveyed.

¶14. The chancellor noted that "a wealth of the badges of fraud are present," even though the company "took great pains to make the transaction appear fair." Additionally, the day Defendants were to go to trial on the fraudulent conveyance claim, GPA filed for Chapter 7 bankruptcy protection in an effort to dissolve the old corporation. The only creditor in the bankruptcy proceeding was Mr. Kopszywa, and the corporation's only remaining asset, a boat, sank the day it was handed over to the trustee. Mississippi State Pilots of Gulfport, Inc. is unmistakably liable for Mr. Kopszywa's judgment against GPA up to the amount fraudulently transferred.

¶15. The amount transferred includes *all* of the accounts receivable from GPA, rather than one week's worth as the chancellor found. Because it is unclear from the record whether the value of the transferred assets would equal the amount of the judgment, it is necessary to discuss the alternative doctrine of "continuity of enterprise."[3] In *Paradise Corp. v.*

---

[3]At the time of conveyance, GPA's tangible assets consisted of the two boats, accounts receivable, a filing cabinet, and an unknown amount of money in a bank account. The trial court found that GPA did not have sufficient assets and capital to satisfy the liability.

*Amerihost Development, Inc.*, 848 So. 2d 177 (Miss. 2003), we adopted the "continuity of enterprise" theory to hold a successor corporation liable for the predecessor's debts where the successor benefitted from the goodwill of the predecessor without sharing the liabilities. The theory considers several factors: (1) whether only one corporation remains after the transfer of assets; (2) identity of stock, shareholders, and directors between the two corporations; (3) retaining the same employees; (4) retaining the same supervisory personnel; (5) retaining the same business facilities in the same physical location; (6) offering the same services; (7) retaining the same name; (8) continuity of assets; (9) continuity of general business operations; and (10) whether the successor holds itself out as the continuation of the previous enterprise. *Id.* at 180 (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 175 (5th Cir. 1985)).

¶16. The trial court also examined this Court's decision in *Paradise*, but found it inapplicable to these facts for the sole reason that this was not a stock acquisition. This finding is clearly erroneous, for identity of stock is only a portion of one factor to be considered. Here, the record demonstrates that the successor company took on the identity of the predecessor company in every way except taking responsibility for the predecessor's debts. The new corporation consisted of identical shareholders, directors, officers, employees, and supervisory personnel. The new corporation also used the same docking facility, dock, pilot boat, office address, and provided the same piloting services. Except for the *Gulfport I*, the

However, to support their argument that Kopszywa's attorney was "too lazy" to attempt to seize the accounts, Defendants claimed in their brief that there was in fact enough money in accounts receivable to satisfy the judgment.

assets were the same, and the only change in general business operations was use of a different name.

¶17. Defendants argue that *Paradise* should not apply for several reasons. First, they argue that no assets other than the *Gulfport II* were transferred from the old corporation to the new one, including the business's goodwill. The undisputed facts reveal that the *entire* business was transferred to the new corporation. Additionally, goodwill has most certainly been transferred. Goodwill has been defined by the U.S. Supreme Court as "the expectancy of continued patronage." ***Newark Morning Ledger Co. v. United States***, 507 U.S. 546, 555, 113 S. Ct. 1670, 1675, 123 L. Ed. 2d 288, 299 (1993) (quoting ***Boe v. Commissioner***, 307 F.2d 339, 343 (9th Cir. 1962)). The new corporation was guaranteed continued patronage because Defendants enjoyed a state-sanctioned monopoly over piloting services in the Gulfport harbor. All vessels of a certain size entering and leaving the Port of Gulfport must be navigated by a pilot who is licensed by the Mississippi State Port Authority, and new pilots could only be licensed upon the recommendation of GPA, now Mississippi State Pilots of Gulfport. Defendants' contention that no assets were fraudulently conveyed is wholly without merit.

¶18. Defendants also claim that their actions were necessary to "ensure continued piloting services to the Port of Gulfport." The defendants do not provide this service for free, and even if a reasonable person would believe their motive was purely altruistic, it would not negate their intent to commit fraud. It is uncontroverted that their sole intent in forming the new corporation was to prevent Mr. Kopszywa from collecting on his judgment.

¶19. Defendants further argue that paying the directors' "salaries" out of the old

corporation's funds was completely proper. They offer no authority to support their position, and even if these amounts were payment for previous piloting work and not corporate dividends, the conveyance is still fraudulent. The directors never resigned as officers and directors of the old corporation. They subsequently used their complete control over the corporation to prefer themselves over a legitimate creditor. We have held that "[o]fficers, directors and stockholders of an insolvent corporation, or one rendered insolvent by conveyance to them, cannot prefer themselves in payment of pre-existing debts and thus deprive creditors of their claims against the corporation." *Cooper v. Miss. Land Co.*, 220 So. 2d 302, 304 (Miss. 1969). Additionally, "[a] director occupies a fiduciary position toward creditors, and he has a better knowledge of the condition of the company than have the other creditors. He should not be permitted to use that position to benefit himself at their expense." *Id*. at 307. Defendants' assertion that "there is nothing wrong with a corporation preferring certain legitimate creditors over others," is completely erroneous under these facts.

¶20. Their additional contentions have no basis in law. The directors argue that no assets could have been transferred because the corporation was rendered insolvent by the judgment and they instructed their accountant to keep the corporations completely separate. They also claim that somehow they should not be liable because Mr. Kopszywa's attorney was "too lazy" to collect on the accounts receivable before the funds were distributed to the directors. Additionally, they assert that enforcing the settlement order would somehow violate the Thirteenth Amendment to the U.S. Constitution prohibiting slavery and involuntary servitude. Defendants cite no statutory or case law to support their contentions, which, even if true, have no relevance to this fraudulent conveyance action. Finally, Defendants argue

9

that the **Paradise** decision "stretch[ed] the traditional notions of the alter ego theory to accomplish a specific ruling."

¶21. These arguments are wholly frivolous and merit no discussion. Under **Paradise**, the new corporation is a mere continuation of GPA and the new corporation is liable for *all* of GPA's debts.

**II. Individual Liability of Directors**

¶22. The trustee argues that the trial court erred in failing to find the directors personally liable for their actions. We have held that "[t]he rationale used by courts in permitting the corporate veil to be pierced is that if a principal shareholder or owner conducts his private and corporate business on an interchangeable or joint basis as if they were one, he is without standing to complain when an injured party does the same." **A & L, Inc. v. Grantham**, 747 So. 2d 832, 843-44 (Miss. 1999) (citing **Bone Constr. Co. v. Lewis**, 250 S.E.2d 851, 853 (Ga. App. Ct. 1978)). Additionally, the chancellor correctly recites the rule that piercing the corporate veil is appropriate where the corporation exists to perpetuate a fraud.[4] *See* **North Am. Plastics, Inc. v. Inland Shoe Mfg. Co.,** 592 F. Supp. 875, 877-78 (N.D. Miss. 1984) (citing **Johnson & Higgins of Miss., Inc. v. Comm'r of Ins. of Miss.**, 321 So.2d 281, 285 (Miss. 1975) (accepting the piercing doctrine in Mississippi)).

¶23. However, the chancellor went on to find that the individual defendants are not

---

[4]The chancellor quoted from a dissenting opinion by Justice Mills: "the only situations which warrant piercing the corporate veil are situations in which a party has abused the corporate entity to perpetrate fraud and evade contractual and tort responsibility." **J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.**, 723 So.2d 550, 554 (Miss. 1998)(Mills, J., dissenting)(citing **Hogan v. Mayor & Aldermen of Savannah**, 320 S.E.2d 555, 558 (Ga. Ct. App. 1984)).

personally liable even though they fraudulently conveyed their entire business:

> In the instant case, their [sic] was no evidence that the individual owners of Gulfport Pilots Association treated the assets of the corporation as their own or used corporate funds to pay private debts. There was no evidence that they failed to observe corporate formalities or keep separate corporate books. The pilots wrongfully conveyed the Gulfport Pilot II to their new corporation, but there was no evidence that they used the corporation's *status* as a corporate entity to perpetuate a fraud. While they created the second corporation to avoid the tort liability incurred by the first, this constituted an avoidance of a *corporate* obligation, not a *personal* one."

(emphasis in original).

¶24.   The trial court erred in finding that there was no evidence that the directors treated corporate assets as their own. As discussed in Part I, the directors distributed the profits of the old corporation to themselves. In doing so, the directors preferred themselves over other creditors and thereby committed fraud. Our case law clearly holds that directors may not violate their fiduciary duties to the corporation and prefer themselves over other legitimate creditors. *Cooper*, 220 So.2d at 304.

¶25. Furthermore, the purpose of piercing the corporate veil is to make individuals *personally liable for corporate obligations*. "The personal liability of [Defendants] arises from their diversion of corporate assets." *Morris*, 546 So.2d at 972. "Corporate officers who participate in illegal diversions of corporate assets are liable therefor." *Gibson v. Manuel*, 534 So. 2d 199, 202 (Miss. 1988) (citing *Knox Glass Bottle Co. v. Underwood*, 228 Miss. 699, 769, 89 So. 2d 799, 828 (1956)).

¶26. Additionally, the findings of the trial court only pertain to a certain number of situations which warrant disregarding the corporate entity. Because of the equitable nature of this doctrine, the corporate veil may be pierced in a variety of situations. *F.M.C. Finance Corp.*

*v. Murphree*, 632 F.2d 413, 422 (5th Cir. 1980). *See **Laya v. Erin Homes, Inc.***, 352 S.E.2d 93, 98-99 (W. Va. 1986) (listing nineteen circumstances that permit a finding of personal liability, including the formation and use of the corporation to assume the existing liabilities of another entity). This Court has previously held that conveying a business to a new corporation in order to avoid a corporate obligation was sufficient to find personal liability. *Morris*, 546 So. 2d 969. Similarly, because the directors have abused the corporate entity to knowingly defraud a legitimate creditor they can be held personally liable, to the extent that the new corporation has acquired the assets of the old corporation. *Id.* at 972. Finally, the chancellor would have required that the directors knowingly contracted with a financially unreliable insurance company in order to hold them individually liable. While the judgment cites no authority, it apparently relies on the rule adopted in some jurisdictions that undercapitalization may warrant disregarding the corporate entity. *See e.g., **Hambleton Bros. Lumber Co. v. Balkin Enters.***, 397 F.3d 1217, 1229 (9th Cir. 2005) (applying Oregon law). This is too stringent a test and is not the rule in Mississippi. Because there is more than sufficient evidence to support a finding of individual personal liability, we decline to address this issue in the present case.

## CONCLUSION

¶27. The findings of the trial court were clearly erroneous. The issues here are the same as those presented in *Morris*, and under *Paradise*, the new corporation is liable for *all* the debts of GPA. Therefore, the judgment is reversed, and this case is remanded for a determination of the amount of Defendants' personal liability, i.e., the value of the fraudulently transferred accounts receivable, as well as a determination of attorneys' fees and punitive damages.

12

¶28. **REVERSED AND REMANDED.**

**WALLER, P.J., EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, C.J., NOT PARTICIPATING.**