In re DEFENSE SERVICES, INC., and Defense Support Group, Ltd., Debtors.

DEFENSE SERVICES, INC., and Defense Support Group, Ltd., Plaintiffs,

v.

UNITED STATES of America, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE; First National Bank and Trust Company of the Treasure Coast, Defendants.

Bankruptcy Nos. 89–00964–BKC–TCB, 89–00965–BKC–TCB.

Adv. No. 89–0082–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

July 10, 1989.

Ackerman, Bakst, Lauer, P.A., Leslie Cloyd, West Palm Beach, Fla., for plaintiffs.

Jose F. DeLeon, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendants.

Michael N. Jonas, Cohen, Scherer, Cohn & Silverman, North Palm Beach, Fla., for First Nat. Bank & Trust Co. of Treasure Coast.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff debtors, who filed simultaneously for chapter 11 bankruptcy relief on March 2, 1989, have jointly sued the Government seeking (a) avoidance, as a preference under 11 U.S.C. § 547, of an IRS prepetition "Request for Offset," and (b) a determination under § 505(a)(1) of the amount of the tax liability, if any, of each debtor.

The Government has answered (CP 4) that Defense Support Group, Ltd., a Mississippi corporation (hereafter DSG) owes "in excess of $416,560" federal employment tax liability, and the Government has counterclaimed for stay relief, under § 362(d) for leave to offset, under § 553, its tax claim against money owed by the Government to DSG and its assignee, Defense Services, Inc., a Florida corporation (hereafter DSI).

The matter was tried on May 2 upon a stipulated record. While the matter was under advisement, the parties agreed (CP 8 at 2) that the interests of the parties could not be fully determined in the absence of a third party, First National Bank of the Treasure Coast (hereafter Bank), which holds a lien against DSG and DSI.

As is required by Rule 19(a)(1), Fed.R. Civ.P., incorporated here by B.R. 7019, the necessary third party was joined as a defendant on May 23. The trial was resumed on June 6 to receive additional evidence occasioned by the joinder of the Bank. (CP 10). The resumed trial was concluded that day.

The Bank has crossclaimed, denying the Government's right to offset, and asserting a claim superior to that of the plaintiffs and the Government. (CP 13). Plaintiffs do not dispute the Bank's claim.

For the reasons which follow, I now conclude that the Government is entitled to the relief it seeks.

The details of the relevant events are not in dispute.

### Amounts Payable On DSG's Government Contracts

A total of $384,080.16 is payable on DSG's four government food service contracts: a contract in Indiana for $170,000, one in Ohio for $82,139.32, one in Florida for $68,500,[1] and one in Hawaii for $63,440.84. (CP 9 at 5).

### DSG's Federal Tax Liability

DSG's tax liability stems from its failure to make any tax deposits for any of the four quarters of 1987 upon its reported federal employment tax liability for that year, a total of $408,932.

A federal tax lien for the amount then due on the last three quarters ($551,264) was filed against DSG on April 22, 1988, in Mississippi.

In June 1988, DSG entered into an agreement with the IRS to pay its liability in monthly payments of $54,000. It defaulted after three payments, but subsequently made a few partial payments.

As of February 8, 1989, giving credit for all payments but also adding statutory interest and penalties, DSG's tax liability totalled $416,560.97, 8.5% *more* than the Government owes on DSG's contracts.

### DSG's Transfer to DSI

■ Both DSG, which was incorporated many years ago but became inactive on December 31, 1988, and DSI, incorporated

---

1. The Government paid this sum to an assignee of DSI, who paid DSI. DSI says it has spent the money. The Government has reserved its claim for the recovery of that sum as "cash collateral," the debtor's use of which required court approval under § 363(c)(2). (CP 9 at 5, n. 3).

on February 2, 1988, are wholly owned and controlled by the same individual, portentously named Swindle. (CP 7, EX D).

On May 31, 1988, DSG and DSI entered into an Agreement for Transfer of Assets, Rights, and Obligation with Respect to [the Hawaii contract]. The Government and the two plaintiffs entered into a Novation Agreement with respect to that contract ten days later.

By the terms of both the Agreement for Transfer (CP 7, Ex D ¶ 5) and the Novation Agreement (CP 7, Ex E ¶ 4) DSI expressly assumed "all obligations and liabilities" of DSG.

Similar agreements were executed in October with respect to the Indiana contract and in December with respect to the Ohio contract.

Without any Government participation, DSG transferred to DSI its claim with respect to the Florida contract in late 1988, after the perfection of the federal tax lien against DSG.

DSI continued to perform the same contracts DSG had with the Government. DSI had no other contracts. DSG's employees became DSI's only employees. I find that DSI was a mere continuation of DSG.

■ All of these transfers were made because of DSG's tax liability. Swindle hoped to obtain additional capital from new investors and recognized that the ever-increasing tax lien could discourage investment in DSG. (CP 7 at 27).[2] I infer that Swindle's purpose in forming DSI and transferring all DSG's assets to DSI was to defraud either potential investors, or potential lenders like the Bank, or the Government, or all three.

### The Bank's Interest

On February, 25, 1988, DSG and DSI obtained a $600,000 line of credit from the Bank, secured in part by DSG's assignment to it of "all sums due or to become due" under DSG's Government contracts. The Bank's security interest was duly perfected in Florida on February 29, 1988, two months before the federal tax lien was filed in Mississippi.

The total sum advanced by the Bank, plus accrued interest, as of June 6, 1989 was $582,838. (CP 15b at 1).

### Discussion

As stated in In re IML Freight, Inc., 65 B.R. 788, 793 (Bankr.D.Utah 1986):

"Since Gratiot v. United States, 15 Pet. 336, 40 U.S. 336, 10 L.Ed. 759, there has been no question of the right of the government to apply moneys due it to the extinguishment of its obligations on other accounts."

Subject to the automatic stay of § 362, the right of all creditors to set off mutual, prepetition debts, is expressly preserved in bankruptcy by § 553(a).

■ Mutuality. The plaintiffs and the Bank argue that the Government's tax claim against DSG lacks mutuality with its contract liability which has been assigned and transferred to DSI. I disagree for several reasons. This issue has been the principal battlefield between the parties.

(i) Had there been no assignments by DSG to DSI and to the Bank of its accounts receivable from the Government, there could be no question as to the Government's right to offset DSG's tax liability against the amount due DSG on its Government contracts. Since when does an assignee of a claim wind up with more than the assignor would be entitled to had he not assigned the claim? [3]

In Florida Bahamas Lines v. Steel Barge "Star 800" of Nassau, 433 F.2d

---

2. His other reasons for the transfer: that he wished to move his home from Mississippi to Florida and that he was unable to pay the tax liability because it was a "moving target" are specious.

3. Of course most rights may be waived, estopped or barred by laches, under appropriate circumstances. None of these affirmative defenses has been pleaded, argued, proved, or claimed by any party as a defense to the Government's asserted setoff.

1243, 1246, 1252 (5th Cir.1970),[4] the Court said:

> "Since a valid and unqualified assignment operates to transfer to the assignee *no greater right or interest than was possessed by the assignor*, 6 C.J.S. Assignments § 82, the most Caribbean [the corporate assignee of a claim for wharfage] can claim is that *it stands in the shoes* of Winson [the corporate assignor wharf owner] which at best, were ill-fitting if not worn out. (At 1246).

> .    .    .    .    .

> "Winson's difficulties were not eased by the assignment to Caribbean who took the assignment with all of its built-in deficiencies. See *Maryland Casualty Co. v. Dulaney Lumber Co.*, 5 Cir.1928, 23 F.2d 378, cert. denied, *Bank of Ruleville v. Maryland Casualty Co.*, 1928, 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007; 6 C.J.S. Assignments § 82. *What Winson in good equity could not assert is equally foreclosed to Caribbean.*" (At 1252). (Emphasis added).

The Court subordinated the prime maritime lien of Caribbean to a junior mortgage on a vessel, and barred enforcement of the maritime lien on account of 47 month's laches and the assignor/lienor's sharp practice.

To my mind, the foregoing fundamental principles are dispositive here. DSI and the Bank, *as assignees of DSG's claims* against the Government, stand in DSG's shoes, and DSG's claims are subject to the Government's right to offset DSG's federal tax liability. There is complete mutuality.

The discussion which follows with respect to mutuality is appended solely because of the parties' preoccupation with that issue, and their failure to note the fundamental limitation of an assignment.

■ (ii) With respect to all the assigned accounts receivable, except the Florida one, DSI expressly assumed DSG's tax liability. The Florida assignment was made *after* the tax lien was perfected (as were the other three), and therefore all four assignments to DSI are subject to the tax lien. 26 U.S.C. § 6323(a); *Randall v. H. Nakashima & Co. Ltd.*, 542 F.2d 270, 275 (5th Cir.1976).

■ (iii) When a transaction is fraudulent, as this one was, the transferee of all, or substantially all of a company's assets, as was the case here, is liable for all of the transferror's debts and liabilities. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 7122; *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985).[5]

(iv) DSI is a "mere continuation" of DSG and is, therefore, liable for all of DSG's debts and liabilities. *Id.*

■ *Irrelevance of Recordation Timing.* As has already been noted, it is undisputed that the Bank's security agreement was recorded two months before the recordation of the IRS tax lien.[6] It is, however, irrelevant to the right of setoff whether the claim asserted as a setoff is a subordinated claim. *Rochelle v. United States*, 521 F.2d 844, 855 (5th Cir.1975) (a partner's individual tax refund claim is subject to setoff of partnership federal tax liability within setoff provision of the Bankruptcy Act).[7] The Court said:

> "We think a subordinated claim can be used to set off a claim by the bankrupt estate against the creditor even though the subordinated claim could not itself share in the dividends."

---

4. The decisions of the Fifth Circuit before October 1, 1981, are binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

5. The law in both Mississippi and Florida is to the same effect. *Meridian Light & Ry. Co. v. Catar*, 103 Miss. 616, 60 So. 657, 658–59 (1912); *In re F & C Services, Inc.*, 44 B.R. 863, 869 (Bankr.S.D.Fla.1984).

6. The validity of the Bank's lien was also subject to the provisions of 26 U.S.C. § 6323(c), which requires that its advances be made within 46 days after the filing of the federal tax lien. *See Rice Investment Co. v. United States*, 625 F.2d 565 (5th Cir.1980). This was not done.

7. There is no material difference between the pertinent provisions of the Act and the Code, and the legislative history of the Code does not suggest any intent to change existing law.

*In re Sound Emporium, Inc.*, 70 B.R. 22, 24 (W.D.Tex 1987) (IRS has right to set off taxes owed by the debtor against amount owed to debtor by the Army for computers, even though government's claim was subordinate to bank's prior secured claim) is directly in point. The District Court followed *Rochelle*, saying:

"The Fifth Circuit specifically addressed this issue in its *Rochelle* decision."

■ *The Alleged Preference.* A voidable preference is a prepetition *"transfer* of an interest of the debtor" that falls within the provisions of § 547(b). The mailing by the IRS a month before bankruptcy of *Requests* for Offset–Government Contracts to the various Government establishments with which DSG had contracts was neither a transfer nor did it result in any prepetition transfer. If the plaintiff debtors have not abandoned their allegations under § 547, that prayer is dismissed with prejudice.

*Stay Relief.* The Government's prayer, under § 362(d)(1) for stay relief to permit its offset of DSG's federal tax liability against the sums owed by the Government on account of the four service contracts, which are the subject of this action, is granted.[8]

■ *Allocation of DSG's Tax Payments.* The plaintiff debtors have disputed the IRS allocation of DSG's prepetition tax payments, asserting that they should have been credited to the trust fund portion of DSG's liability.

I agree with the Government that this determination which has no effect on the debtors' tax liabilities, though it affects Swindle's individual liability under 26 U.S.C. § 6672, is unnecessary and inappropriate here. *See United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986). This court abstains and leaves that issue to determination by a more appropriate tribunal.

*Conclusion*

As is required by B.R. 9021, a separate judgment will be entered dismissing with prejudice the debtors' complaint against the Government, and the Bank's crossclaim against the Government; and granting the Government's counterclaim for stay relief to offset, under § 553, its tax claim against money owed by the Government to DSG and its assignees, DSI and the Bank. The tax claim exceeds the money owed. Costs may be taxed on motion.

DONE and ORDERED.

8. It is granted retroactively to include the escrowed offset in connection with the Florida contract, noted *supra* in n. 1. Similarly, the

Government's recovery of those escrowed funds as an unauthorized use of "cash collateral," § 363(c)(2) is also approved.