**In re FAIRFIELD PLANTATION, INC., Debtor.**

**PLANTATION EQUITY GROUP, INC., Plaintiff,**

v.

**FAIRFIELD PLANTATION, INC., Defendant.**

**Bankruptcy No. 90–42098F.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Dec. 17, 1992.

Scott Schallhorn, Little Rock, AR, for Fairfield Plantation.

Joyce Babin, Little Rock, AR, for Plantation Equity.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Pending before the Court is Plantation Equity Group, Inc.'s Motion for Relief from the Automatic Stay to Permit Right of Set-off and/or Recoupment.

### I. *Jurisdiction*

The Court has jurisdiction over this pending matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The following Memorandum Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### II. *Findings of Fact*

Plantation Equity Group, Inc. ("PEGI") and Fairfield Plantation, Inc. ("FPI") entered the following Joint Stipulation of Facts ("Joint Stipulation") in this case.

Plantation Equity Group, Inc. ("PEGI") and Fairfield Plantation, Inc. ("Fairfield Plantation") stipulate as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A) and (G). This matter is a core proceeding and the court may enter a final order.

### BACKGROUND INFORMATION

2. Fairfield Plantation filed voluntary chapter 11 bankruptcy proceedings on October 3, 1990. Since that time, Fairfield Plantation has remained in possession of its property and in control of its affairs pursuant to 11 U.S.C. §§ 1107 and 1108.

3. Fairfield Plantation was a wholly owned subsidiary of Fairfield Communities, Inc. ("FCI"). FCI also filed voluntary chapter 11 bankruptcy proceedings on October 3, 1990, along with nine other subsidiaries of FCI (Fairfield Acceptance Corporation ("FAC"), Fairfield Harbour, Inc., Fairfield of the Carolinas, Inc., Fairfield Ocean Ridge, Inc., Fairfield Pagosa, Inc., Fairfield River Ridge, Inc., Fairfield St. Croix, Inc., Fairfield Ventura, Inc. and Fairfield Williamsburg, Inc.). Two additional subsidiaries (Fairfield Green Valley, Inc. and Fairfield Sunrise Village, Inc.) filed voluntary chapter 11 proceedings on November 20, 1990.

4. FCI, along with Fairfield Plantation, and the other subsidiaries filed Joint Reorganization Plans, which proposed three separate plans: (1) a plan for "Consolidating Entities" (consisting of the resort subsidiaries, including FCI and Fairfield Plantation); (2) a plan for FAC; and (3) a plan for two other subsidiaries, Fairfield Green Valley, Inc. and Fairfield Sunrise Village, Inc. FCI also sought substan-

tive consolidation under the terms of the Consolidating Entities' Plan. By Order dated November 1, 1991, the Court granted substantive consolidation and stated that consolidation of the resort debtors would occur on the Effective Date of the Plan.

5. On August 14, 1992, the Court confirmed the Joint Plans, with the Plans having an Effective Date of September 1, 1992. FCI and Fairfield Plantation and the other Consolidating Entities were merged in accordance with the Plan on September 1, 1992.

## FACTS

6. On September 18, 1979, Fairfield Plantation executed a Note in favor of Carrollton Federal Savings and Loan Association ("Carrollton Federal"). To secure payment of the Note, Fairfield Plantation provided Carrollton Federal with a Deed to Secure Debt ("Carrollton Federal Deed to Secure Debt") encumbering the following described real property located in Carroll County, Georgia:

> All that tract or parcel of land being in the Monticello Section of a plat designated "Treasure Lake of Georgia, Inc." designated as Lot No. 53, Section 1, as shown on plat prepared by Jacob Roland Harrison, Registered Surveyor No. 1134, dated December 9, 1970, a copy of which plat is recorded in Plat Book 11, Page 128, which plat and the record thereof are by reference incorporated herein. Said Lot 53, Section 1, fronts 135 feet on the northerly side of Monticello Drive and extends back northward therefrom along the east line of Meadow Place as shown on said plat.
> The property is conveyed subject to declaration of restrictions recorded in Deed Book 231, page 247, and Deed Book 233, page 1, in the Office of the Clerk of Superior Court of Carroll County, Georgia. All of said restrictions being covenants which run with the land.

The Carrollton Federal Deed to Secure Debt was duly recorded with the Carroll County, Georgia, Real Estate Records on September 18, 1979, in Deed Book 397, at page 87. A copy of the Carrollton Federal Deed to Secure Debt is attached as Exhibit "A" and incorporated herein.

7. Fairfield Plantation and FCI continued to make payments to Carrollton Federal on the Note secured by the Carrollton Federal Deed to Secure Debt until bankruptcy proceedings were filed. However, after that time, payments ceased and the debt is in default. There currently is due to Carrollton Federal from Fairfield Plantation an amount of $24,012.09, plus additional attorney's fees.

8. The Carrollton Federal Deed to Secure Debt was not released and remains an encumbrance on the Property that was conveyed to PEGI by Fairfield Plantation pursuant to the November 10, 1987 General Warranty Deed.

9. Prior to its bankruptcy filing and after the Deed to Secure Debt was provided Carrollton Federal, on November 10, 1987, Fairfield Plantation conveyed the following real property located in Carroll County, Georgia, by General Warranty Deed to PEGI:

> All those tracts or parcels of land lying and being within the real estate development known as Fairfield Plantation (the external boundaries of Fairfield Plantation, Inc., being described in Exhibit "A" attached hereto) the boundaries of which tracts or parcels are described in Exhibits "B–1" through "B–12;" TOGETHER with such gores as may exist between the boundaries, as described by the metes and bounds set forth in Exhibits "B–1" through "B–12," and the subdivided lots, streets and roadways shown and delineated by the plats of survey set forth in Exhibit "C" attached hereto. LESS AND EXCEPT so much of the property described in said Exhibits "B–1" through "B–12" as may be contained within the boundaries of the property described by said plats of survey, BUT SPECIFICALLY INCLUDING the subdivided lot described in Exhibit "B–12."

Exhibits "A," "B–1" through "B–12," "C" and "D" and the plats referred to herein are by reference incorporated herein.

Said property is conveyed subject to the "Permitted Exceptions" set forth in Exhibit "D" attached hereto and by reference incorporated herein.

As reflected on Exhibit "B–12," the conveyance by General Warranty Deed specifically included the following described real property (the "Property"):

All those tracts or parcels of land lying and being in the Fairfield Plantation Subdivision (formerly Treasure Lake Subdivision) having the boundaries shown for Lot 53, Section 1 (Monticello Section) of said Subdivision according to a plat of survey thereof prepared by Harrison Engineering recorded in Plat Book 11, Page 128, Carroll County, Georgia, Public Real Estate Records, which plat and the record thereof are by reference incorporated herein.

The General Warranty Deed was recorded with the Carroll County, Georgia, Real Estate Records on November 11, 1987, in Deed Book 579 at Page 445. Pursuant to the General Warranty Deed, Fairfield Plantation warranted that the Property was free from encumbrances at the time of the conveyance. A copy of the General Warranty Deed with Exhibit "B–12" only is attached as Exhibit "B" and incorporated herein. (The remaining exhibits to the General Warranty Deed, which are lengthy, are not in dispute and are not relevant for determination of the issues before the Court and have not been included.)

10. As a part of the conveyance, on November 10, 1987, PEGI executed and delivered to Fairfield Plantation a Purchase Money Promissory Note (the "Note") in the principal amount of $1,750,000.00. A copy of the Note is attached as Exhibit "C" and incorporated herein. To secure payment of the Note, PEGI executed and delivered to Fairfield Plantation a Deed to Secure Debt and Security Agreement ("PEGI Deed to Secure Debt") dated November 10, 1987 and filed with the Office of the Clerk of

Superior Court, Carroll County, Georgia on November 11, 1987. A copy of the PEGI Deed to Secure Debt is attached as Exhibit "D" and incorporated herein.

11. On July 29, 1988, Fairfield Plantation endorsed and assigned all of its right, title and interest in the Note to FAC. The endorsement and assignment is set forth on the final page of the Note attached hereto as Exhibit "C".

12. In addition to the endorsement on the Note, Fairfield Plantation executed and delivered to FAC an Assignment of Deed to Secure Debt and Security Agreement dated July 28, 1988. Said Assignment was recorded with the Office of the Clerk of Superior Court, Carroll County, Georgia on August 12, 1988 and therein recorded in Deed Book 603, Page 543. A copy of the Assignment of Deed to Secure Debt and Security Agreement from Fairfield Plantation to FAC is attached as Exhibit "E" and incorporated herein.

13. After receiving the Assignment from Fairfield Plantation, FAC endorsed and assigned on July 29, 1988, all its right, title and interest in the Note to First National Bank of Boston ("FNBB"). The endorsement and assignment is likewise set forth on the final page of the Note attached hereto as Exhibit "C".

14. In addition to the endorsement of the Note, FAC executed and delivered to FNBB an Assignment of Deed to Secure Debt and Security Agreement dated July 28, 1988. Said assignment was recorded with the Office of the Clerk of Superior Court, Carroll County, Georgia on August 12, 1988 and therein recorded in Deed Book 603, Page 544. A copy of the Assignment of Deed to Secure Debt and Security Agreement from FAC to FNBB is attached as Exhibit "F" and incorporated herein.

15. FAC further executed and delivered to FNBB a Collateral Assignment of Notes and Mortgages formally assigning to FNBB all of FAC's interest in the Note and the Deed to Secure Debt. A copy of the Collateral Assignment of

Notes and Mortgages is attached hereto as Exhibit "G" and incorporated herein.

16. The Assignment of Deed to Secure Debt and Security Agreement and the Collateral Assignment of Notes and Mortgages from FAC to FNBB were not absolute assignments but were assignments for purposes of security.

17. On March 1, 1990, PEGI and Fairfield Plantation and FAC executed a Modification and Extension Agreement of Promissory Note ("Modification Agreement") regarding the Note. Pursuant to the terms of the Modification Agreement, the principal balance owing of $1,460,894.73 as of January 1, 1990, was to be amortized over 20 years, with the interest rate to be determined on the first day of each quarter prior to the quarterly due date by reference to the First National Bank of Boston's prime rate. Pursuant to the Note and Modification Agreement, PEGI makes equal quarterly installments of principal and interest. The entire amount of the Note is due and payable seven years from April 1, 1990. A copy of the Modification Agreement is attached as Exhibit "H" and incorporated herein.

18. The recitals of the Modification Agreement specifically acknowledge the assignment and endorsement by Fairfield Plantation of all its right, title and interest in the Note to FAC and the further assignment by FAC of its interest to FNBB. A space for FNBB's signature was provided on the Modification Agreement for the sole purpose of FNBB providing consent to the extension of the Note. A copy of the Modification Agreement signed by FNBB has not been located, however.

19. Pursuant to the Note and the Deed to Secure Debt, all notices, requests and other communications were to be made to FCI, 2800 Cantrell Road, Little Rock, Arkansas 72203, Attn: Joe Gunter, Senior Vice President and Special Counsel.

20. Pursuant to the Note and Modification Agreement, the next quarterly payment in the amount of $39,204.01 (consisting of $18,261.18 in principal and $20,942.83 in interest) is due to be paid by PEGI to Fairfield Plantation on October 1, 1992. There currently is owed an approximate principal balance of $1,278,282.93, plus interest in the amount of $17,983.56 through September 17, 1992.

21. PEGI makes it quarterly payments under the Note and Modification Agreement to "Fairfield Communities Corporation" at 2800 Cantrell Road, Little Rock, Arkansas 72203.

22. The claim of PEGI against Fairfield Plantation is a pre-petition, unsecured claim arising from Fairfield Plantation's breach of the warranty contained in the November 10, 1987 General Warranty Deed. PEGI has asserted no other prepetition or post petition claim against Fairfield Plantation.

## THE DEBTOR'S OPERATIONS

23. The Fairfield debtors primarily are engaged in the development, construction, marketing, and preparation of recreational and resort developments. Historically, the financial and business affairs of the Fairfield debtors, including Fairfield plantation, FCI and FAC, have been tightly interwoven. Fairfield's resort and financing operations routinely have obtained financing collectively pursuant to complex, multi-party borrowing agreements and guarantees whereby contract receivables, real estate and other collateral were pledged collectively as security for a global financing package. FCI operated the resort subsidiaries, including Fairfield Plantation, collectively, utilizing a centralized administrative and cash management system from FCI's corporate headquarters in Little Rock, Arkansas. FCI and its resort subsidiaries typically held themselves out to third parties as a single, cohesive unit. The Fairfield subsidiaries were commonly owned; had overlapping officers and directors; and participated in joint marketing and sales programs. Business reports, including audited balance sheets, profit and loss statements, inter-company accounts and federal tax returns are prepared and disseminated on consolidated basis under FCI's direction. Separate audited finan-

cial statements were never prepared. Most creditors of FCI and its resort subsidiaries relied upon and looked to the reputation of FCI and its resort subsidiaries.

24. FAC was organized as a wholly owned subsidiary of FCI to act as a financing arm for FCI and its subsidiaries, including Fairfield Plantation. Like the other FCI subsidiaries, FAC had overlapping officers and directors. FAC's purposes were to purchase contract receivables and collect payments and to accommodate financing transactions for the resort subsidiaries. FAC operated from FCI's corporate headquarters in Little Rock as a part of FCI's centralized management system. The resort subsidiaries routinely did not hold notes, contracts and other receivables for collection, but would assign or transfer the notes, contracts and other receivables to FCI and/or FAC to facilitate collection and as required by the Fairfield debtors' financing arrangements.

### APPLICABLE LAW

25. Pursuant to the Note, Georgia law is applicable in determining the parties' rights.

### III. *Conclusions of Law*

■ "The burden of proof is on the creditor to prove entitlement to setoff." *In re Fulghum Constr. Corp.*, 23 B.R. 147, 151 (Bankr.M.D.Tenn.1982). In this case it is PEGI which claims the right to setoff its debt against the debtor and, therefore, PEGI has the burden of proof. PEGI makes four arguments in support of its asserted right to setoff, each of which is addressed below.

A. PEGI's contention that the assignment of the note from FPI to FAC did not destroy the mutuality of claims under 11 U.S.C. § 553.

Section 553 provides, in pertinent part, that

(a) ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a).

■ To attain the right to setoff under section 553, PEGI must prove three elements: (1) a pre-petition debt owed by the creditor to the debtor; (2) a pre-petition claim of the creditor against the debtor; and (3) the debt and claim are mutual obligations. *Id.*

There is no dispute in the present case that PEGI has a pre-petition claim against FPI under 11 U.S.C. § 101(5)(A) (claim based on right to payment whether or not reduced to judgment). It is also undisputed that PEGI's obligation to FPI, which was later assigned to FAC, arose prior to the filing of the bankruptcy petition. Therefore, the mutuality requirement of 11 U.S.C. § 553(a) is the only element in dispute.

On November 10, 1987, FPI conveyed real property, by general warranty deed, to PEGI in exchange for a purchase money promissory note in the amount of $1,750,-000. On July 29, 1988, FPI assigned all of its right, title, and interest in the PEGI note to FAC. On the same date, FAC assigned the note to First National Bank of Boston ("FNBB") with recourse.

In support of its assertion that the requisite mutuality exists between PEGI and FPI, PEGI argues that the assignment of PEGI's note receivable from FPI to FAC did not destroy mutuality for purposes of § 553. FPI contends that mutuality of claims does not exist because PEGI has a claim for breach of warranty against FPI, while the debt (against which PEGI seeks to offset this claim) is owed to FAC not FPI. FPI contends that since the parties are different, no mutuality exists and, therefore, there can be no setoff under 11 U.S.C. § 553(a).

■ Neither party can dispute that FPI assigned the note to FAC because the assignment is detailed in the Joint Stipulation and the parties are bound by their stipula-

tions.[1] *See O'Connor v. City & County of Denver*, 894 F.2d 1210, 1225 (10th Cir.1990) (parties are bound by stipulations); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1107 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979) (same). Since the assignment is undisputed, the remaining issue to be resolved is the effect of the assignment on the mutuality of claims between PEGI and FPI.

The Joint Stipulation specifically provides that the assignment from FAC to FNBB was not absolute and was done for purposes of security. However, the Joint Stipulation is silent as to the nature of the assignment of the PEGI note from FPI to FAC.

■ The Court finds that the assignment from FPI to FAC was an absolute assignment without recourse. The Court reaches this conclusion after examining, and comparing, the language of the two assignments. The language detailing the assignment of the PEGI note from FPI to FAC provides as follows:

> For value received, Fairfield Plantation, Inc. does hereby sell, assign and endorse over to Fairfield Acceptance Corporation all its right, title and interest in and to this Purchase Money Promissory Note.

(Joint Stipulation, Exhibit C.) The language detailing the assignment of the note from FAC to FNBB, which the parties agree is a conditional assignment for security purposes, provides as follows:

> For value received, Fairfield Acceptance Corporation does hereby sell, assign and endorse over to The First National Bank of Boston, *with recourse*, all its right, title and interest in and to this Purchase Money Promissory Note.

(Joint Stipulation, Exhibit C) (emphasis added).

The first assignment from FPI to FAC assigns "all its right, title and interest" and contains no conditional language. (Joint Stipulation, Exhibit C.) On its face, it appears to be an absolute assignment. This is particularly evident when the first as-

signment is compared to the second assignment from FAC to FNBB, which all parties agree was a conditional assignment. The second assignment contains substantially the same language as the first assignment, with the addition of the phrase "with recourse." Clearly, if the first assignment were conditional, FAC would not have needed to add this conditional language in the second assignment. The fact that additional language was added to evidence that the second assignment was conditional indicates that the first assignment was absolute. Nothing in the Joint Stipulation of Facts, or in either party's briefs, contradicts this finding.

■ Having determined that the assignment from FPI to FAC was an absolute assignment, it is clear that the party which is. liable to PEGI for breach of general warranty deed (FPI) is different from the party to which PEGI is indebted (FAC). Accordingly, the Court finds that mutuality between the parties does not exist and, therefore, the mutuality requirement of 11 U.S.C. § 553(a) is not satisfied.

■ PEGI can not setoff its claim against FPI by reducing the debt that PEGI owes to FAC under section 553(a). The mutuality requirement of section 553(a) is designed to prevent "triangular" setoff. *See In re United Sciences of America, Inc.*, 893 F.2d 720, 723 (5th Cir. 1990). Mutuality requires that "the debts involved be between the same parties standing in the same capacity." *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990). The mutuality provision of section 553(a) requires that "each party ... own his claim in his own right severally, with the right to collect in his own name ... in his own right and severally." *Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1036 (5th Cir.1987). Accordingly, there can be no right to setoff under section 553(a) where PEGI seeks to setoff its claim against one party (FPI) in satisfaction of a debt owed to a third party (FAC).

---

**1.** On March 1, 1990 PEGI, FPI, and FAC executed a Modification and Extension Agreement of Promissory Note which specifically acknowl-

edges (1) the assignment by FPI to FAC, and (2) the further assignment by FAC to FNBB.

PEGI relies heavily on *In re Defense Servs., Inc.*, 104 B.R. 481 (Bankr.S.D.Fla. 1989) in support of its argument that the assignment of the note from FPI to FAC did not destroy the mutuality between PEGI and FPI. In *Defense Servs.*, the debtor, Defense Services Group ("DSG"), owed a debt to a creditor. The creditor sought to setoff its claim against DSG against a debt that the creditor owed to Defense Services, Inc. ("DSI"), a related debtor. The creditor had originally owed the debt to DSG, however DSG had assigned the claim to DSI. In holding that the assignment from DSG to DSI did not destroy the mutuality between DSG and the creditor, the Court relied upon the fact that DSI was a related corporation set-up for the sole purpose of defrauding investors and creditors. The Court inferred "that [the] purpose in forming DSI and transferring all DSG's assets to DSI was to defraud either potential investors, or potential lenders like the Bank or the Government, or all three." *Id.* at 484.

This Court is not persuaded that the holding in *Defense Servs.* applies to the instant case. In *Defense Servs.*, the Court determined that DSI was a continuation of DSG which was set-up for the sole purpose of defrauding creditors. In the instant case there has been no allegation of fraud against FPI or FAC. The cases are therefore easily distinguishable.

Furthermore, to the extent that the decision in the *Defense Servs.* case was based on the assertion that absent any fraud, an absolute assignment of a claim from one debtor to a related company does not destroy the mutuality between the assignor and a third party creditor, this Court finds that holding to be that of the minority view. In the instant case, this Court's determination that the absolute assignment of the claim from FPI to FAC destroyed mutuality is based upon the majority view that "[m]utuality of obligations means that the obligations must be between the same parties." *In re Fulghum Constr. Corp.*, 23 B.R. at 152 (citations omitted). *See*

also, *In re Davidovich*, 901 F.2d at 1537. Here, PEGI has a claim against FPI and owes a debt to FAC. Since FPI and FAC are not the same party, mutuality does not exist and a setoff will not be allowed under 11 U.S.C. § 553(a).[2]

B.  PEGI's contention that setoff should be allowed under equitable principles.

■   PEGI contends that if mutuality is found not to exist, an exception to the mutuality requirement should be made by the Court under principles of equity. In support of this argument, PEGI relies upon *Modern Settings, Inc. v. Prudential–Bache Sec., Inc.*, 109 B.R. 605 (S.D.N.Y. 1989) (district court allowed setoff in absence of mutuality for equitable reasons). PEGI contends that in the present case, it would be inequitable to allow FAC to profit from the assignment of FPI's claim without responsibility for the underlying liability. FPI argues that section 553 should be strictly construed and a setoff allowed only when the requirement of mutuality is satisfied.

PEGI's reliance on *Modern Settings* is not proper. *See Modern Settings, Inc. v. Prudential–Bache Securities, Inc.*, 936 F.2d 640 (2d Cir.1991) (reversing the district court decision allowing setoff). Moreover, PEGI's argument for equitable setoff is contrary to the position of the Eighth Circuit as set forth in *In re NWFX, Inc.*, 864 F.2d 593 (8th Cir.1989). In *NWFX*, the Eighth Circuit stated that "[t]he overall structure of the Bankruptcy Code is designed to treat creditors equally. Every setoff by its very nature is a preference." *Id.* at 595. The Eighth Circuit further stated that "[w]e follow the reasoning of the Seventh Circuit in recognizing that there is no reason for enlarging the right to setoff beyond that allowed in the Code." *Id.* at 595–96 (citing *Boston & Main Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986)). Accordingly, this Court follows the view of the Eighth Circuit that setoff should not be extended beyond what is

---

**2.**  The Court's finding that FPI and FAC are not the same party for purposes of 11 U.S.C.

§ 553(a) is discussed in more detail in section "C" of this opinion.

expressly authorized by the Bankruptcy Code. The Court finds that equitable set-off is not justified in this case.

## C. PEGI's contention that FPI and FAC are one entity.

■ PEGI contends that FAC's interest is a continuation of FPI's interest and that this Court should pierce the corporate veil and find that FAC and FPI are one in the same. Such a finding would mean that PEGI's obligation to FAC is really an obligation to FPI which can be setoff, under 11 U.S.C. § 553(a), against PEGI's claim against FPI. In short, it would satisfy the mutuality requirement. *See In re Fulghum Const. Corp.*, 23 B.R. at 152 (parties to both claims must be the same in order to allow setoff).

In support of its argument that FPI and FAC are one corporation, PEGI cites the *Defense Servs.* case discussed previously in this opinion. *See In re Defense Servs., Inc.*, 104 B.R. at 481. PEGI also details the close relationship between FPI and FAC, including the facts that (1) both FPI and FAC were wholly owned subsidiaries of FCI; (2) FCI, FPI, and FAC had overlapping directors and officers; (3) FAC was organized for the sole purpose of acting as the financing arm of FCI; (4) centralized records for all FCI subsidiaries were kept by FCI; (5) PEGI's note to FPI provided for notice to FCI, not FPI; (6) FCI and its resort subsidiaries held themselves out to third parties as a single unit and participated in joint marketing programs; and (7) FCI and its subsidiaries routinely obtained financing collectively.

The *Defense Servs.* Court held that DSI was a continuation of DSG and that they were one corporation for purposes of the mutuality requirement of 11 U.S.C. § 553(a). *Id.* at 484. However, *Defense Servs.* is distinguishable from the present case in that the *Defense Servs.* Court made a finding that DSI was formed by DSG to defraud DSG's creditors.

In the present case there is no allegation of fraud or other misuse on the part of FPI. The Joint Stipulation in this case describes the purpose of FAC as that of a financing arm for FCI and its subsidiaries. There is no evidence before the Court to suggest that FAC's separate corporate identity was used to defraud investors or creditors as was the case in *Defense Servs.* Accordingly, the differences between FAC and DSI are such that the *Defense Servs.* decision is not persuasive in the present case.

Moreover, PEGI's list of the similarities between FCI, FPI and FAC is not persuasive. The Court finds that these corporations were carefully maintained as separate corporate entities with separate purposes and identities. The fact that FPI and FAC submitted separate plans of reorganization before this Court is further evidence of their separate identities.

■ Under Georgia law, piercing the corporate veil is allowed to:

remedy injustices which arise where a party 'has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or to evade contractual or tort responsibility'.... Sole ownership of a corporation by ... another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form.

*Heyde v. Xtraman, Inc.*, 199 Ga.App. 303, 304, 404 S.E.2d 607, (1991) (citations omitted). "[C]ourts must exercise 'great caution,' and must not disregard the corporate entity without a showing that the corporate form has been abused." *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 837 (11th Cir.1991) (citations omitted) (discussion of Georgia law on piercing the corporate veil).

There is no evidence before this Court which indicates that the purpose of FAC is anything other than to serve as a financing arm for FCI and its subsidiaries. In light of the absence of evidence that FAC was formed to defeat justice, perpetrate fraud, or to evade contractual or tort responsibility this Court, applying Georgia law, finds that FAC has a separate corporate identity from that of FPI. Accordingly, the party against which PEGI has a claim (FPI) is

different from the party to which PEGI owes a debt (FAC) and mutuality does not exist.

D. PEGI's contention that the doctrine of recoupment should be employed to satisfy its claim against FPI.

PEGI asserts that its claim against FPI and FAC's claim against PEGI arise out of the same transaction and, therefore, PEGI should be allowed to recoup its claim under the doctrine of recoupment. FPI concedes that there was one transaction between FPI and PEGI. FPI, however, asserts that for the doctrine of recoupment to apply there must be some form of overpayment to the debtor by the creditor and that there is no evidence before the Court of any overpayment by PEGI.

The doctrine of recoupment should be narrowly construed because it provides an exception to the general rule against preferences. *See In re American Sunlake Ltd. Partnership*, 109 B.R. 727, 730 (Bankr.W.D.Mich.1989). For the doctrine of recoupment to apply, there must be a single transaction between the debtor and the creditor seeking recoupment, and there must be some form of overpayment to the debtor by the creditor. *Id.* There is no evidence in the record of any overpayment by PEGI to FPI. Accordingly, the requirements for recoupment have not been met. The Court finds that PEGI is not entitled to recoup its claim against FPI.

IV. *Conclusion*

PEGI is not entitled to setoff under 11 U.S.C. § 553(a) because the requisite mutuality does not exist. PEGI owes a debt to FAC and has a claim against FPI. FAC and FPI are separate corporations and there is no basis for piercing the corporate veil. In light of the Eighth Circuit's ruling in *NWFX*, this Court will not expand the right of setoff under the guise of equity, particularly when doing so would cause harm to creditors of FAC. Finally, the absence of an overpayment on the note by PEGI to FPI makes the doctrine of recoupment inapplicable in this case.

PEGI's Motion for Relief from the Automatic Stay to Permit Right of Setoff and/or Recoupment is denied.