220 So.2d 302 (1969)
Carle COOPER and Edgar O. Robinson
v.
MISSISSIPPI LAND COMPANY, Inc., Ray M. Stewart, Argle T. Stewart, Willie C. Ryan and George J. Ryan, Individually, and Gulf National Bank of Gulfport.
No. 45217.
Supreme Court of Mississippi.
March 3, 1969.
*303 Robert H. Weaver, Watkins, Pyle, Edwards & Ludlam, Jackson, Stanley Munsey, Picayune, for appellants.
Williams & Williams, Poplarville, Mize, Thompson & Mize, Gulfport, for appellees.
ETHRIDGE, Chief Justice.
Carle Cooper and Edgar O. Robinson, complainant-appellants, brought this suit in the Chancery Court of Pearl River County against the defendant-appellees, Mississippi Land Company, Inc.; the officers, directors and stockholders of that corporation, Ray M. Stewart, Argie T. Stewart, Willie C. Ryan and George J. Ryan; and the Gulf National Bank of Gulfport. Its purpose was to set aside a conveyance of corporate land, allegedly in fraud of creditors, to these officers, directors and stockholders; to obtain a money *304 judgment against the company in favor of complainants; to declare void a deed of trust on the land executed by the grantees in favor of Gulf National Bank; and for other relief. It was averred that the Bank was not a bona fide purchaser for value, and therefore was not entitled to priority over the rights of complainants. The chancery court dismissed the bill of complaint.
We hold that the deed to the directors of the corporation is void. Officers, directors and stockholders of an insolvent corporation, or one rendered insolvent by conveyance to them, cannot prefer themselves in payment of pre-existing debts and thus deprive creditors of their claims against the corporation. The decree of the chancery court is reversed, and judgment is rendered here setting aside the deed, giving a judgment for complainants against the corporation in the amount of their notes, adjudicating a lien in their favor superior to the Bank as to property not covered by the Bank's prior mortgage, and remanding the case to the trial court.

I.
Cooper and Robinson are real estate brokers in the City of Picayune. After negotiations instituted by Cooper for the purchase of approximately 300 acres of land north of Picayune, Mrs. Nellie W. Stem, in August 1962, sold Cooper, for $5000, an option to purchase the land. The option was taken in the name of Cooper for the benefit of four persons, George J. Ryan, his wife, Willie C. Ryan, Robinson and Cooper, each of whom contributed one-fourth of the option price, or $1,250. In October 1962, the Mississippi Land Company, Inc., was chartered for the purpose of receiving the option to buy the Stem property and to develop it into a residential subdivision. Seven thousand seven hundred shares of stock, with a par value of $1.00 each, were issued and paid for, with each of the four parties owning 1,925 shares. The four stockholders constituted the board of direectors, with Cooper serving as president, Mrs. Ryan vice president, Robinson secretary, and George Ryan treasurer.
On March 6, 1963, the company exercised the Cooper option and entered into a purchase contract with Mrs. Stem. The company was obligated to pay a total price for the 300 acres of $146,664, payable over a fifteen-year period. Mrs. Stem was obligated to release the land from the contract and convey it to the company upon payment of a stipulated amount, which ranged from $1220.20 to $1527.75 per acre, depending upon its location. The company was obligated to pay for and have released at least ten acres per year over the fifteen-year period, and to make its payments for the release of the various tracts before March 6 of each year. In the event the company failed to make any annual payment, the seller would be entitled to possession of all land not previously paid for and conveyed and the contract would be terminated.
When the Stem contract was executed, the company tendered $45,000 toward the purchase price, and Mrs. Stem released twenty acres which were used by the company for development of Woodland Heights Subdivision, Part 1. In May 1964, the company paid for and Mrs. Stem released another ten acres. Development of this subdivision progressed until June 6, 1964, when the subdivision improvements, consisting of sewer lines, gas lines, streets and related work, were completed and paid for in full, with the cost of development of Part 1 being approximately $136,000. By August of 1965, approximately eighty-three of ninety-three lots had been sold at prices ranging from $2500 to $3000. On March 6, 1965, the company paid for an additional ten acres, which were released by Mrs. Stem.
In the summer of 1965 dissension and disputes developed among the officers and directors of the corporation, with Mr. and Mrs. Ryan constituting one faction, and on the other side, Cooper and Robinson. The *305 two factions began negotiating with one another for the purpose of buying or selling their respective interests in the company. After several proposed agreements were considered, it was decided to employ a disinterested attorney, Ray M. Stewart, to draft a contract by which the corporation would purchase the one-half interest of the faction agreeing to sell. Stewart prepared the final form of the agreement, in which there was left blank the names of the two parties who would sell their stock interest and the amount of the consideration to be paid by the corporation for the one-half interest. Thereafter, Mr. and Mrs. Ryan on the one hand, and Cooper and Robinson on the other sat down together and began to bid on the price which the corporation would pay for a one-half interest. Bidding began with a nominal figure, and continued to rise, with each faction wanting the corporation to purchase the stock interest of the other.
The Ryans offered to Cooper and Robinson, as a part of the consideration, a corporate note in the amount of $151,050. This was accepted, and a contract to sell their stock was executed by Cooper and Robinson and the corporation on July 30, 1965. The corporation agreed to purchase their fifty percent interest in the outstanding capital stock of the company for a total consideration of $185,000, with $34,950 payable in cash and a corporate note for $151,050. The note was to be paid on or before five years from date, but the buyer, Mississippi Land Company, Inc., would make an annual payment of not less than $6,400 on the note. The note would be secured by a deed of trust on the Stem contract.
When the contract for the corporation to purchase the stock was made, Robinson was president, Mrs. Ryan vice-president, Cooper secretary, and George Ryan treasurer. After the sale of their stock, Cooper and Robinson resigned as officers and directors. On August 12, 1965, the company sold the stock purchased from Cooper and Robinson to Louise O. Stewart, who received 1,284 shares and to Argie T. Stewart, who received 2,566 shares. Mrs. Stewart is the wife of Ray Stewart, who prepared the contract of sale. The minutes of that day reflect that Argie T. Stewart and Mrs. Louise Stewart were elected as directors, and the following became corporate officers: George Ryan, president; Argie T. Stewart, vice president; Mrs. Louise Stewart, secretary, and Mrs. Ryan, treasurer. Also on August 12, 1965, the company executed two promissory notes in the principal amount of $75,525 each, one to Cooper and one to Robinson, pursuant to the terms of the contract to buy their stock. These notes were secured by a deed of trust, executed by the company in favor of Cooper and Robinson, encumbering the Stem contract and the lands which had not been released to the company. An addendum to the deed of trust contained an agreement by the company to make the annual payment for the release of ten acres to Mrs. Stem by January 6 of each year, beginning in 1966, and to give notice to Cooper and Robinson that payment had been made. Failure to give such notice constituted a default, entitling Cooper and Robinson to foreclose the deed of trust.
In the summer of 1965, the company began development of twenty acres of land which had been released from the Stem contract. This subdivision, consisting of forty-eight lots, became Woodland Heights, Part 2 the cost for development of which was $59,183.
On September 22, 1965, the company borrowed $130,000 from the Gulf National Bank of Gulfport, evidenced by a promissory note which was secured by a deed of trust encumbering the 20.3 acres developed as Woodland Heights Subdivision, Part 2. Argie and Ray Stewart negotiated for this loan on behalf of the corporation, and at the time it was made, a balance sheet of the company, dated August 31, 1965, was submitted to J.M. Smallwood, Executive Vice President of Gulf National Bank. This statement reflected a figure of $147,200 for the purchase of treasury stock at a *306 price in excess of par value, a deficit for retained earnings of $3,977.94, and the notes payable to Cooper and Robinson in the amount of $75,525 each.
On January 6, 1966, the company secured the release of an additional ten acres under the Stem contract for $30,000, and at the same time the company paid Cooper and Robinson $3,200 each, in accord with the contract to buy their stock.
On December 9, 1966, Mississippi Land Company, Inc., conveyed all of its property to Argie T. Stewart, Ray M. Stewart, Willie C. Ryan and George J. Ryan. This consisted of ten lots in Woodland Heights Subdivision Part 1, thirty-eight lots in Woodland Heights Subdivision Part 2, and ten acres of undeveloped land released from the Stem contract. This land was conveyed to the stockholders, who were also officers and directors, in proportion to the number of shares held, with the exception of Ray M. Stewart, who acquired in proportion to his wife's interest. The consideration for this deed of the company's property was the assumption by the individual grantees of a balance of $57,401.87, which was owed on the original $130,000 debt to the Bank, and the cancellation of company notes aggregating $46,500 which were held by the officers and directors as the result of loans they made to it from 1963 through August 1965.
Smallwood, the Bank's officer, testified that it was a preferred policy of the bank to lend money to individuals rather than to corporations. Smallwood suggested or recommended that the assets of the corporation be conveyed to the individual officers and directors, who would then execute a note and deed of trust covering the property so conveyed to his bank. Accordingly, Argie T. Stewart, Ray M. Stewart, Willie C. Ryan and George J. Ryan, stockholders, officers and directors of the company and owners of virtually all of its assets, as the result of the deed to them of December 9, 1966, executed to the Bank a personal note and deed of trust, dated December 14, 1966, in the principal amount of $57,401.87. At this time the Bank also had in its possession the balance sheet and financial statement of Mississippi Land Company of August 31, 1965, whch reflected the corporate notes to Cooper and Robinson. Smallwood testified that he required and obtained no additional financial statement before getting the note and deed of trust from the individual officers and directors on December 14, 1966. Moreover, under the Bank's original deed of trust of September 22, 1965, for $130,000, the bank was secured by 20.3 acres of undeveloped land, which was to be developed as Woodland Heights Subdivision Part 2. Under the arrangement involving the individual note and deed of trust of the officers and directors, the Bank acquired the additional security of ten lots in Woodland Heights Subdivision Part 1 and ten acres of undeveloped land which had been released from the Stem contract.
After the deed of December 9, 1966, to its officers and directors, Mississippi Land Company ceased to exist as a going concern. It was stripped of its property and assets. When the deadline date of January 6, 1967 arrived, less than a month later, the company failed to pay for and obtain a release of an additional ten acres from the Stem contract. To do so would have cost around $30,000. The Stem contract was the final, remaining asset, whatever it was worth, of the company. Subsequently Cooper and Robinson declined to incur the expense of continuing the Stem contract, covered by the corporate deed of trust to them, and it terminated on March 6, 1967.

II.
This suit is based upon the provisions of Mississippi Code 1942 Annotated section 1327 (1956), which states:
The said [chancery] court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, * * * whether their debts be *307 due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned "no property found." Upon such a bill a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such writs may be issued in other cases, and subject to such proceedings and provisions thereafter as are applicable in other cases of such writs; * * * The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill.
The facts are substantially undisputed. The conveyance of December 9, 1966, from Mississippi Land Company, Inc. to Ray M. Stewart, Argie T. Stewart, Willie C. Ryan and George J. Ryan falls within the prohibitions of the statute, i.e., as being a fraudulent conveyance of property and other device resorted to by these stockholders, officers and directors of the company for the purpose of hindering, delaying, and defrauding its creditors, Cooper and Robinson.
The rule is concisely stated in 15A Fletcher, Cyclopedia Corporations section 7414 (1967):
A conveyance or transfer of property to or for the benefit of directors or other officers of a corporation may be set aside if made without consideration or with intent to hinder, delay or defraud creditors. Similarly conveyances made while the corporation is insolvent, or in contemplation of insolvency, may be set aside, because this amounts to an infringement of the trust fund doctrine. * * *
The directors of an insolvent corporation, who are also creditors thereof, have no right to grant themselves preferences or advantages in the payment of their claims over other creditors. A director occupies a fiduciary position toward creditors, and he has a better knowledge of the condition of the company than have the other creditors. He should not be permitted to use that position to benefit himself at their expense. 15A Fletcher, Cyclopedia Corporations §§ 7468, 7469 (1967); 19 Am.Jur.2d Corporations § 1574 (1965); 19 C.J.S. Corporations § 1391 (1940).
Perhaps the earliest case in this jurisdiction on this subject is Love Manufacturing Company v. Queen City Manufacturing Company, 74 Miss. 290, 20 So. 146 (1896). The Queen City Manufacturing Company, an insolvent corporation, executed a general assignment by which it preferred debts due to several of the directors who were stockholders, and also preferred debts for which two of the directors who were stockholders were bound as endorsers. These directors who were beneficiaries of the preferences constituted a majority of the board of directors. Creditors of the company successfully attacked the preferences. Chief Justice Tim E. Cooper made a clear analysis of the reasons for the rule:
The precise and only question now involved is, may the directors of an insolvent corporation prefer themselves, by devoting its assets to pay debts due them, or debts on which they are bound as indorsers for the corporation? This question has not been before decided in this state, and we have no hesitation to announce that this cannot be lawfully done. To permit it would be to allow those intrusted with the governing power of a corporation to prefer themselves by their own determination and action  a proposition monstrous in the extreme, shocking to the moral sense, and wholly indefensible, as it seems to us. * * * Here the preference was resolved on and made by the active and potential participation *308 of the beneficiaries of the assignment. By their own act they appropriated for their own benefit the available assets of the corporation of which they were the governing body,
If it be conceded that a corporation in failing circumstances may do what a natural person may, it would not follow that this preference could be upheld, for it was never heard that a natural person might prefer himself by an assignment, general or special, or otherwise. He may prefer others, but not himself. These directors, by their own will and act, preferred themselves,  a thing quite natural, but which the law cannot sanction. By their act they practically dissolved the corporation and put an end to its going, and appropriated its property to themselves, thereby destroying forever all chance of realization by other creditors from the continued operation of the corporation. (74 Miss. at 300, 301, 20 So. at 147).
Smith v. Mississippi Livestock Producers Association, 188 So.2d 758 (Miss. 1966), is a recent application of substantially the same principles. Accord: King v. Wooldridge, 78 Miss. 179, 28 So. 824 (1900); Lamb v. Russell, 81 Miss. 382, 32 So. 916 (1902); see also Millsaps v. Chapman, 76 Miss. 942, 26 So. 369 (1899).
Under similar principles, the effect of the deed of December 9, 1966, from Mississippi Land Company, Inc. to Argie T. Stewart, Ray M. Stewart, Willie C. Ryan and George J. Ryan was to render the corporation insolvent, if it was not already in that condition shortly before that deed. It stripped the company of its assets, except whatever value the Stem contract had at that time, and left Cooper and Robinson holding corporate notes in the combined amount of $151,050, on which there was due $144,650. The officers and directors preferred themselves over the creditors, and thereby in effect rendered the corporation insolvent. Ray M. Stewart, who acquired in proportion to his wife's interest in the stock, she being secretary of the corporation, was in the same category and subject to the same responsibilities as was Mrs. Stewart. One of the notes cancelled was for $11,650 to Ray and Louise Stewart dated August 13, 1965. Moreover, Stewart had served as attorney for the corporation and participated in negotiations for the two loans from the bank. By analogy, Knox Glass Bottle Company v. Underwood, 228 Miss. 699, 751, 752, 761, 762, 89 So.2d 799, 819, 824 (1956), held that a director, who is a fiduciary, is barred from making a profit at the expense of his corporation, and the prohibition likewise extends to the wife and other close relatives of the fiduciary. In short, the deed of December 9, 1966, is invalid and is cancelled, it having been made with intent to hinder, delay and defraud creditors of the company, and having resulted in the insolvency of the company.
This situation does not involve a corporation which, although insolvent, is a going concern, and the corporation secures an officer for a contemporaneous loan made to it fairly and in good faith. The notes written off as a result of the deed were pre-existing loans by the grantees. See 19 Am.Jur.2d Corporations § 1578 (1965).
Cooper and Robinson, payees of the corporate notes, could sue on them without resorting to their security if they so elected. Rea v. O'Bannon, 171 Miss. 824, 158 So. 916 (1935); 37 Am.Jur. Mortgages § 517 (1941); 59 C.J.S. Mortgages §§ 342, 485 (1949). The Stem contract, constituting complainants' collateral, was in the nature of a right in the corporation to purchase real estate. In order to utilize that collateral, complainants would have had to foreclose and then to pay Mrs. Stem about $30,000 to keep the contract in force for another year. They had the right to waive the use of this burdensome collateral and sue directly on their promissory notes. Defendants apparently had determined in December 1966 that the corporation would *309 not exercise its option to purchase under the Stem contract but to abandon it.
Moreover, Gulf National Bank is not a bona fide, innocent purchaser for value without notice, and is not entitled to priority over the rights of complainants as to the additional property, not previously mortgaged, attempted to be conveyed by the deed of December 9, 1966. The bank, through its officer, Smallwood, had knowledge of the prior indebtedness to Cooper and Robinson, because it was in possession of the financial statement of August 31, 1965, submitted by the corporation to the bank reflecting these outstanding debts. The recorded deed of trust to Cooper and Robinson, of which the bank had constructive notice, included a statement of the corporate debt to them. The bank suggested and apparently encouraged the transfer of the corporate assets to the individuals, thus resulting in the transactions which stripped the corporation of its remaining property. By this device, the bank was able to acquire from the individual grantees additional security on about thirty acres of land, which otherwise would have been available for the claims of corporate creditors. A mortgagee with actual or imputed knowledge of a fraudulent transaction cannot defeat the claims of creditors. Dendy v. Commercial Bank & Trust Company, 143 Miss. 56, 108 So. 274 (1926); 59 C.J.S. Mortgages §§ 234-237 (1949).

III.
Appellees contend that the Mississippi Land Company, Inc., was not solvent when it issued its promissory notes to appellants for the purchase of their stock in 1965; that these appellants did not come into equity with clean hands; and that therefore under the provisions of section 5309-05, Mississippi Code 1942 Annotated (Supp. 1966), their notes were invalid. However, the chancery court held that the corporate notes to Cooper and Robinson were good and valid obligations of the corporation, and appellees took no cross-appeal. Further, even if this issue were reviewable, the testimony was conflicting and the evidence was ample to support the necessarily implied finding of the chancellor that the corporation was solvent immediately before and after the notes were executed on August 12, 1965.
Since the defendants, grantees in the deed of December 9, 1966, were corporate officers (except Ray Stewart, who stands in the shoes of his wife, an officer), they were in a fiduciary relationship with the corporation. The burden of proof was upon them to show good faith and fairness in the transaction, and they wholly failed to do this. Knox Glass Bottle Company v. Underwood, 228 Miss. 699, 741, 89 So.2d 799, 813 (1956). On the contrary, the undisputed evidence presents a case squarely within the prohibition against an officer and director of a corporation conveying to himself property with intent to hinder, delay and defraud creditors, under circumstances where such conveyance renders the corporation insolvent.
In conclusion, the decree of the chancery court is reversed, and judgment is rendered here for appellants-complainants as follows:
A money decree is rendered in favor of Cooper against Mississippi Land Company, Inc., in the amount of $72,325, together with interest thereon from August 12, 1966, and in favor of Robinson against Mississippi Land Company, Inc., in the amount of $72,325 together with interest thereon from August 12, 1966. The deed from the company to Ray M. Stewart, Argie T. Stewart, Willie C. Ryan and George J. Ryan, dated December 9, 1966, is declared void and is cancelled. The deed of trust from Ray M. Steward, Argie T. Stewart, Willie C. Ryan and George J. Ryan, dated December 14, 1966, to Gulf National Bank as beneficiary is declared void and is cancelled insofar as it purports to create an encumbrance on lands not theretofore held as security by the prior deed of trust from the company to the bank. The complainants are decreed *310 to have a lien on the corporate property, which is superior to that of the bank on lands not held as security by the bank under its earlier deed of trust. The lien on property of the corporation which is adjudicated in complainants is for the enforcement of payment to them of the total sum of $144,650 with interest. This cause is remanded to the chancery court for further proceedings consistent with this opinion.
Reversed, judgment rendered here for appellants, and remanded.
BRADY, INZER, SMITH and ROBERTSON, JJ., concur.